**Diane FOUCHE, Plaintiff-Appellant,**

v.

**The JEKYLL ISLAND–STATE PARK AUTHORITY, Defendant-Appellee.**

No. 82–8528.

United States Court of Appeals, Eleventh Circuit.

Sept. 9, 1983.

Amanda F. Williams, Brunswick, Ga., Fletcher Farrington, Savannah, Ga., for plaintiff-appellant.

Gary R. Hurst, Asst. Atty. Gen., Atlanta, Ga., for defendant-appellee.

Before KRAVITCH and JOHNSON, Circuit Judges, and LYNNE *, District Judge.

JOHNSON, Circuit Judge:

Diane Fouche filed suit against the Jekyll Island-State Park Authority ["the Park Authority"],[1] alleging that she had been discriminated against on the basis of her sex, in violation of 42 U.S.C.A. § 1983 and Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq. She also asserted a pendent state claim under O.C.G.A. § 51–12–6. Her complaint sought damages and injunctive relief. The district court dismissed the suit, holding that the Eleventh Amendment barred the Section 1983 claim, and that it did not have jurisdiction

---

* Honorable Seybourn H. Lynne, U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. Jekyll Island was acquired by Georgia through condemnation in 1947. In 1950 the Georgia General Assembly created Jekyll Island State Park Authority and leased the island to it. In 1964 the Park Authority was renamed the Jekyll Island-State Park Authority.

of the Title VII claim because Fouche had not received a right to sue letter from the United States Attorney General. We affirm the ruling as to the Section 1983 claim but reverse and remand for further proceedings on the Title VII claim.

I. § 1983

A. Eleventh Amendment Immunity

 Eleventh Amendment immunity to suit in federal court applies to states and state officials but not to municipal corporations, counties, or other political subdivisions of the state. *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977). Whether the Park Authority is an arm of the state protected by the Eleventh Amendment "turns on its function and character as determined by state law." *Sessions v. Rusk State Hospital,* 648 F.2d 1066, 1069 (5th Cir.1981). Factors that bear on this determination include the definition of "state" and "political subdivision," the state's degree of control over the entity, and the fiscal autonomy of the entity. See *Mt. Healthy, supra,* 429 U.S. at 280, 97 S.Ct. at 572; *United Carolina Bank v. Board of Regents,* 665 F.2d 553 (5th Cir.1982).

 In *Mt. Healthy* the Supreme Court observed that "[u]nder Ohio law the 'State' does not include 'political subdivisions,' and 'political subdivisions' do include local school districts." 429 U.S. at 280, 97 S.Ct. at 572. Georgia law does not define "state" or "political subdivision." However, Chapter 4 of Title 50 of the Official Code of Georgia Annotated discusses the organization of the executive branch. Section 50-4-3(c) provides that, when authorities are assigned to a department of the state for administra-

tive purposes only, the "authority created by state law shall retain its separate identity as an instrumentality of the state and a public corporation." Similarly, the statute creating the Park Authority states that it "shall be deemed to be an instrumentality[2] of the state and a public corporation." O.C.G.A. § 12-3-232(a). Those provisions illustrate the dual nature of authorities under Georgia law, in that they are both instrumentalities of the state and public corporations.[3] Yet the inclusion of authorities in Chapter 4, entitled "Organization of Executive Branch Generally," suggests that an authority should be considered as an arm of the state rather than as a municipal corporation or political subdivision.

The state's degree of control over the Park Authority also demonstrates that it is an arm of the state. The Park Authority is attached to the Georgia Department of Natural Resources for administrative purposes only. O.C.G.A. § 12-3-232(b). Its budget is reviewed by the Office of Planning and Budget and submitted to the General Assembly as part of the Department of Natural Resources' budget. O.C.G.A. § 50-4-3. Three members of the Park Authority are state officials and the other four members are appointed by the Governor. O.C.G.A. § 12-3-233(a). In addition, the Park Authority's employees are members of the state employees' retirement system. O.C.G.A. § 47-2-313.

Even though the Park Authority can raise money through the issuance of bonds and from the operation of Jekyll Island State Park, its fiscal life is controlled by the state. As noted above, its budget is submitted to the General Assembly. All of its financial records must be submitted annual-

---

2. Fouche contends that, even though the Park Authority is an instrumentality of the state, it is not protected by Eleventh Amendment immunity because instrumentalities do not enjoy sovereign immunity under Georgia law. This contention is refuted by Georgia cases finding that instrumentalities of the state are protected by sovereign immunity. E.g., *C.W. Matthews Contracting Co., Inc., v. Dept. of Transportation,* 160 Ga.App. 265, 286 S.E.2d 756 (1981). In addition, O.C.G.A. § 45-9-40 authorizes the purchase of group liability insurance for state employees operating state-owned motor vehi-

cles but provides that "nothing contained in this article shall be construed in any manner whatsoever to waive the sovereign immunity of the state or any of its agencies or instrumentalities." See *Hicks v. Shea,* 149 Ga.App. 396, 254 S.E.2d 511 (1979).

3. See generally, Note, *The Legal Nature of Public Purpose Authorities: Governmental, Private, or Neither?* 8 Ga.L.Rev. 680 (1974) [hereinafter "Public Purpose Authorities"].

ly to the state auditor for inspection. O.C. G.A. § 12–3–234. All leases granted by the Park Authority are deemed to be contracts between the individual lessee, the Authority, and the state of Georgia. O.C.G.A. § 12–3–249(d). The General Assembly must approve the sale of specified lands on Jekyll Island. O.C.G.A. § 12–3–248.

The Park Authority serves a public purpose and its profit making enterprises do not alter its public character. The Park Authority supports itself through the operation of a golf course, hotels, restaurants, and other park facilities. However, the statute creating the Authority specifically provides that all income resulting from these activities must be used "for the sole purpose of beautifying, improving, developing, enlarging, maintaining, administering, managing, and promoting Jekyll Island State Park at the lowest rates reasonable and possible for the benefit of the people of the State of Georgia." O.C.G.A. § 12–3–271. Confirming its public character is the fact that the Authority's property and income are exempt from taxation because "the carrying out of its corporate purpose [is] in all respects for the benefit of the people of this state and constitute[s] a public purpose and ... the authority will be performing an essential governmental function in the exercise of the power conferred on it by this part." O.C.G.A. § 12–3–274.

■ The Eleventh Amendment protects the sovereignty of the state by prohibiting suits when recovery would be paid from state funds. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Fouche points to two factors that allegedly show that any recovery here would not come from state funds. First, during the period relevant to this lawsuit, March 19, 1979, through March 19, 1981, the Park Authority was self-supporting and received no state funds appropriated by the Georgia Assembly. We do not consider this factor to be dispositive because a judgment would be paid out of current funds. The record is silent as to the extent of the appropriations the Authority has received during its life-

time. However, because the Park Authority's budget is submitted to the General Assembly, presumably the state would be responsible for any debts incurred by it that could not be paid out of its revenues.

■ Fouche also suggests that the state is not responsible for the Park Authority's debts because the authorizing statute provides that its revenue bonds are not deemed to constitute a debt of the state of Georgia. O.C.G.A. § 12–3–261. However, the authorizing statute does not specify whether the Authority's other debts are debts of the state. One of the main reasons for the creation of authorities is to permit them to issue bonds without violating state constitutional prohibitions against debt.[4] Therefore, the fact that the Park Authority's revenue bonds are not debts of the state does not mean that the state would not appropriate money to pay the Park Authority's other debts.

Fouche's contention that the provision relating to bond debts applies to all debts is primarily based on *Georgia v. Regents of University System,* 179 Ga. 210, 175 S.E. 567 (1934). *Regents* held that the University of Georgia could issue bonds without violating the state constitution's prohibition against debt because any debt resulting would be "a debt against a corporation governed by the Board of Regents, and not against the state...." 179 Ga. at 222; 175 S.E. at 573. Accord *McLucas v. State Bridge Building Authority,* 210 Ga. 1, 77 S.E.2d 531 (1953); *Sheffield v. State School Building Authority,* 208 Ga. 575, 68 S.E.2d 590 (1952). These three cases only hold that the state is not liable for a debt arising from the authority's issuance of bonds. Nevertheless, *Regents* also contains broad language about the independence of the university from the state:

The university corporation is not the state, or a part of the state, or an agency of the state. It is a mere creature of the state, and a debt of the creature does not stand upon a level with the creator and never can rise thereto. It is first, last,

---

**4.** See Note, *Public Purpose Authorities, supra,* 8 Ga.L.Rev. at 686.

and always a debt of the creature and in no sense a debt of the creator.

179 Ga. at 222; 175 S.E. at 574. However, in 1935 the Georgia Assembly enacted a law in response to *Regents* which provided that the " 'Regents of the University System of Georgia,' is hereby declared to be a governmental agency of the State of Georgia.... The members of the Board of Regents ... are hereby declared to be public officers of the State of Georgia...." Ga.L.1935 p. 171 at 172. See *Busbee v. Georgia Conference, American Association of University Professors,* 235 Ga. 752, 756, 221 S.E.2d 437, 441 (1975). In addition, two decisions by the Georgia Supreme Court demonstrate that the Board of Regents is a part of the state of Georgia for sovereign immunity purposes. In *Busbee, supra,* and *McCafferty v. Medical College of Georgia,* 249 Ga. 62, 287 S.E.2d 171 (1982), the court assumed that a suit against "the Board of Regents ... is a suit against the state." *McCroan v. Bailey,* 543 F.Supp. 1201, 1207 (S.D.Ga. 1982) (discussing *McCafferty*). In both cases the determination of whether the Board of Regents is protected by sovereign immunity hinged on whether its immunity was waived by its authorization to sue and be sued. The 1935 legislation, *Busbee,* and *McCafferty* effectively refute the broad language of *Regents.* Because Fouche asserts that the Board of Regents has the same legal status as Georgia authorities, *Busbee* and *McCafferty* also reinforce our conclusion that the Park Authority is an arm of the state.

There are no Georgia or federal cases discussing the status of this Authority. However, both state and federal courts have examined whether other Georgia authorities are protected by sovereign immunity. In *McDevitt & Street Co. v. Georgia Building Authority,* 343 F.Supp. 1238 (N.D. Ga.1972), the court held that the Georgia Building Authority could not be sued because it was "an arm or alter ego of the state." *Id.* at 1240. Similarly, in *Medical Center Hospital Authority v. Andrews,* 250 Ga. 424, 297 S.E.2d 28 (Ga.1982), the Supreme Court of Georgia held that the Hospital Authority had waived its sovereign immunity, necessarily implying that, as an arm of the state, it enjoyed sovereign immunity. See generally *Glover v. Donaldson,* 243 Ga. 479, 481–82 n. 5, 254 S.E.2d 857, 859 n. 5 (1979).

Although Georgia authorities are both instrumentalities and public corporations, case law demonstrates that they are assumed to possess sovereign immunity. Similarly, our examination of the enacting legislation for the Authority establishes that, although a public corporation, it is closely controlled by the state and a suit against it is effectively a suit against the state. Therefore, we conclude that the Eleventh Amendment bars Fouche's Section 1983 claim unless the Park Authority has waived its immunity.

## B. Waiver of Eleventh Amendment Immunity

■ Waiver of a state's Eleventh Amendment immunity will be found "only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction'." *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1361, 39 L.Ed.2d 662 (1974) (quoting *Murray v. Wilson Distilling Co.,* 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909)). Furthermore, consent to suit in state court does not necessarily waive Eleventh Amendment immunity. *Jagnandan v. Giles,* 538 F.2d 1166, 1177 (5th Cir.1976), *cert. denied,* 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1083 (1977).

The Park Authority's enacting statute provides that the "Authority ... may sue and be sued ... in all courts." O.C.G.A. § 12–3–232(a). This waiver language should be read in conjunction with the provision of O.C.G.A. § 12–3–275, which states:

Venue and jurisdiction for actions under part.

Any action to protect or enforce any rights under this part shall be brought in the Superior Court of Fulton County, Georgia, and any action pertaining to validation of any bonds issued under this

part shall likewise be brought in such court, which shall have exclusive, original jurisdiction of such actions.

The district court held that these two provisions waived the Authority's immunity to suits in state court but not in federal court. We agree. A similar result was reached in *United Carolina Bank v. Board of Regents,* 665 F.2d 553, 559 (5th Cir.1982), where the court declared that "[t]he fixing of venue in Texas counties indicates strongly that the intended waiver applied to state court proceedings."

■ Fouche asserts that the broad language of O.C.G.A. § 12–3–232(a) providing for suits in "all courts" should control. One commentator has recently noted that the pertinent inquiry is "the comprehensiveness of the statutory language used."[5] For example, a state statute granting only the power to "sue and be sued" may not waive Eleventh Amendment immunity, *Petty v. Tennessee-Missouri Bridge Comm'n,* 359 U.S. 275, 277, 79 S.Ct. 785, 787, 3 L.Ed.2d 804 (1959), while a statute authorizing an entity "to sue and be sued in any court of law or equity," *McCroan v. Bailey,* 543 F.Supp. 1201, 1208 (S.D.Ga.1982) (construing *McCafferty v. Medical College of Georgia,* 249 Ga. 62, 287 S.E.2d 171 (1982)), constitutes a complete waiver of immunity from suit in state and federal courts. Although the waiver language of § 12–3–232 is as comprehensive as the provision in *McCroan,* it must be read in conjunction with the venue provision. There was no comparable venue provision in *McCroan.*

■ Fouche also argues that the venue provision cannot restrict the broad waiver language because it applies only to suits concerning bonds. Two responses are appropriate. First, at least part of the provision applies to all actions. The first clause states that it applies to "any action . . . under this part," and O.C.G.A. § 12–3–230 reveals that "part" refers to the entire "Jekyll Island-State Park Authority Act."

Second, a similar venue provision was examined in *M.A.R.T.A. v. McCain,* 135 Ga. App. 460, 218 S.E.2d 122 (1975), and the court observed "that the General Assembly has made a habit of obscuring broad venue and jurisdiction provisions under the narrow topic of 'Revenue Bonds,'" *id.* at 461, 218 S.E.2d at 123, citing to the Park Authority's venue provision, among others. The *McCain* court held that the venue provision applied to any suit against M.A.R.T.A., even if it did not pertain to revenue bonds. Fouche nevertheless suggests that the venue provision here is limited to bond actions because of the holding in *Glover v. Donaldson,* 243 Ga. 479, 254 S.E.2d 857 (1979). *Glover* declared that when statutory venue provisions conflict with state constitutional provisions the former must yield. In *Glover* the Supreme Court of Georgia held that when M.A.R.T.A. was sued as a joint tortfeasor the Georgia constitutional venue provision which provides for an action against joint tortfeasors in the county of residence of any joint tortfeasor controlled. However, the *Glover* rule does not apply in this case because there is no conflicting constitutional provision. Fouche contends that Ga. Const. Art. 6, § 2, ¶ 6 conflicts with the Park Authority's venue provision. Article 6, § 2, ¶ 6 states that all civil cases not otherwise provided for must be tried in the county of defendant's residence. However, O.C.G.A. § 12–3–275 specifically provides for venue of Park Authority suits. Therefore, the constitutional venue provision cited by Fouche is inapplicable to actions concerning the Authority.

Because the *Edelman* standard is not met here, we find no waiver of Eleventh Amendment immunity.

### C. Prospective or Injunctive Relief

■ Because Fouche has sued an agency of the state rather than state officials, the Eleventh Amendment also bars injunctive or prospective relief. *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) (per curiam).

---

**5.** Note, *Express Waiver of Eleventh Amend-* *ment Immunity,* 17 Ga.L.Rev. 513, 530 (1983).

## II. Title VII

■ The Eleventh Amendment does not bar Fouche's Title VII claim against the Park Authority because Congress may provide for private suits against states or state officials, pursuant to its authority under section five of the Fourteenth Amendment. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976). However, the district court dismissed Fouche's Title VII claims because she had not received the appropriate right-to-sue letter. Under the provisions of 42 U.S.C.A. § 2000e–5(f)(1),[6] a right-to-sue letter must be issued by the United States Attorney General because this case involves "a government, governmental agency, or political subdivision." Fouche initially received notices of right-to-sue from the Equal Employment Opportunity Commission ["EEOC"] and filed those notices with the district court. After the Park Authority moved to dismiss the Title VII claim, Fouche's attorney wrote to the Attorney General and requested a right-to-sue letter. A representative of the Attorney General informed Fouche's counsel that the Justice Department did not intend to issue a right-to-sue notice in this case. The Justice Department's position is based on the directive of 29 C.F.R. § 1601.28(d),[7] which states that the right-to-sue letter in this type of case must be issued by the EEOC, directly contradicting the statutory language of 42 U.S.C.A. § 2000e–5(f)(1). Thus, in determining whether Fouche can maintain her Title VII claim, we must first address whether the requirement of 42 U.S.C.A. § 2000e–5(f)(1) is jurisdictional or is subject to equitable waiver, modification, or estoppel. If the requirement is not jurisdictional, we must then decide whether the facts of this case warrant a modification of the requirement.

■ In *Pinkard v. Pullman-Standard,* 678 F.2d 1211 (5th Cir. Unit B 1982) *cert. denied,* —— U.S. ——, 103 S.Ct. 729, 74 L.Ed.2d 954 (1983),[8] the Court held "that receipt of a right-to-sue letter is a condition precedent to a Title VII claim rather than a jurisdictional prerequisite." *Id.* at 1215. In *Pinkard* the plaintiffs had filed their suit before they received their right-to-sue let-

---

**6.** 42 U.S.C.A. § 2000e–5(f)(1) provides in pertinent part:

If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivision, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice.

**7.** The relevant portion of 29 C.F.R. § 1601.-28(d) states:

Notices of right-of-sue [sic] for charges against Governmental respondents. In all cases where the respondent is a government, governmental agency, or a political subdivision, the Commission will issue the notice of right to sue when there has been a dismissal of a charge.... In all other cases where the respondent is a government, governmental agency, or political subdivision, the Attorney General will issue the notice of right to sue....

Prior to November 4, 1980, the regulation provided:

Notices of right to sue for charges against Governmental respondents. Notices of right to sue in cases where the respondent is a government, governmental agency, or a political subdivision thereof, shall be issued by the Attorney General, who has the authority to issue such notices.

29 C.F.R. § 1601.28(d), amended by 45 Fed. Reg. 73037, Nov. 4, 1980.

**8.** In *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982), this Court accepted as binding precedent the post-September 30, 1981, decisions of a Unit B panel of the former Fifth Circuit.

ters from the EEOC. The district court dismissed the Title VII claim, finding that it lacked jurisdiction because 42 U.S.C.A. § 2000e–5(f)(1) provides that the right-to-sue notice must be received before suit is commenced. See footnote 6, *supra*. The Fifth Circuit reversed, concluding that "the receipt of a right-to-sue letter is a condition precedent, which on proper occasion may be equitably modified." *Id.* at 1218–19. Accord *Rice v. New England College,* 676 F.2d 9, 10 (1st Cir.1982) (requirements of § 2000e–5(f)(1) are not jurisdictional). A brief examination of *Jackson v. Seaboard Coast Line Railroad Co.,* 678 F.2d 992 (11th Cir.1982), confirms the applicability of the *Pinkard* holding to this case.

In *Jackson* the Court explored whether Title VII's procedural requirements are jurisdictional prerequisites which if not complied with deprive a federal court of subject matter jurisdiction. After examining the language of Title VII, its legislative history, and the decisions of the Supreme Court and the former Fifth Circuit, the *Jackson* court concluded that "the conditions precedent to filing a Title VII action are not jurisdictional prerequisites." *Id.* at 1003. Furthermore, although *Jackson* did not address the issue presented in this case,[9] it broadly declared:

> [a]lthough the [Supreme Court and the former Fifth Circuit] have not had occasion to address the nature of each of Title VII's preconditions, we discern no rational basis for treating those that have not been considered from those that implicitly or explicitly have been held not to be jurisdictional.

*Id.* at 1009 (footnote omitted). Therefore, *Jackson* mandates that all Title VII procedural requirements to suit are henceforth to be viewed as conditions precedent to suit rather than as jurisdictional requirements. See *Zipes v. Trans World Airlines, Inc.,* 455

U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (requirement that EEOC charge be timely filed is not jurisdictional prerequisite).

The Park Authority argues that the holdings of *Pinkard* and *Jackson* cannot apply to this case because those suits were against private parties and this one is against an arm of the state. According to the Authority's argument, Title VII preconditions, even if not jurisdictional prerequisites in suits between private parties, are jurisdictional prerequisites to the Title VII waiver of Eleventh Amendment immunity when the defendant is an arm of the state. The Park Authority has not offered any precedent to support this distinction, and we have been unable to find any. The rationale and broad holding of *Jackson* militate against such a distinction. Citing *Jackson,* a district court in this Circuit recently rejected the same contention in a case that presented closely analogous facts to the one at hand. *English v. Ware County Dept. of Family & Children Services,* 546 F.Supp. 689, 692 n. 4 (S.D.Ga.1982). In *English* the plaintiff received an EEOC determination that it lacked reasonable cause to believe her charges were true, with an attached right-to-sue notice. The determination instructed the plaintiff that if she wished to pursue her claim she must file suit in federal district court; it said nothing about the necessity of a right-to-sue notice from the Attorney General. The court found that under these circumstances the statutory requirement of notice from the Attorney General should be suspended. *Id.* at 693.

Here the district court, without considering either *Pinkard* or *Jackson,*[10] stated that 29 C.F.R. § 1601.28(d) is null and void because it conflicts with the clear language of the statute. It assumed the statutory requirement was jurisdictional, and therefore did not discuss equitable modification. In *Stinson v. State of Georgia,* C.A. No. 80–

---

**9.** The issues in *Jackson* were: the proper naming of a party in the EEOC charge and right-to-sue letter, the timeliness of the EEOC charge, and whether an EEOC charge filed by one par-

ty can be used by the non-filing plaintiffs. 678 F.2d at 1000.

**10.** *English* was decided subsequently to the district court's opinion in this case.

1940A (N.D.Ga. March 23, 1981), the court also held that the language of Title VII requiring the Attorney General to issue the letter is binding. Accord *Davis v. Georgia Department of Human Resources,* C.A. No. 81–2199A (N.D.Ga. Feb. 12, 1982). However, the *Stinson* Court indicated that it would consider equitable modification in appropriate circumstances. In *Stinson* the plaintiff had apparently not made any effort to obtain a notice from the Attorney General; the court noted that a different result might have been reached if the plaintiff was unable to obtain a right-to-sue letter from the Attorney General. Here, Fouche has conclusively demonstrated that she cannot get the required notice from the Attorney General because the Attorney General refuses to issue it to her.

Having concluded that the requirement that the Attorney General issue the right-to-sue letter is not jurisdictional, we must now decide whether the facts of this case warrant equitable modification of the statutory requirement. It is apparent that Fouche has diligently attempted to obtain the required notice, but the Attorney General has refused to issue it. To dismiss her Title VII claim for failure to receive the proper notice when she is unable to obtain it would obviously be unfair to Fouche. Therefore, the requirement that Fouche receive a right-to-sue notice from the Attorney General is waived.[11]

The decision of the district court is AFFIRMED in part, REVERSED in part, and the case is REMANDED for further proceedings consistent herewith.

---

**11.** Our decision is consistent with earlier decisions which have declined to dismiss suits when the EEOC or the Attorney General refused to issue a right-to-sue letter. *Kahn v. Pepsi Cola Bottling Group,* 526 F.Supp. 1268 (E.D.New York 1981); *Stapper v. Texas Dept. of Human Resources,* 470 F.Supp. 242 (W.D. Tex.1979); *Johnson v. Duval County Teachers Credit Union,* 507 F.Supp. 307 (M.D.Fla.1980). *See Miller v. International Paper Company,* 408 F.2d 283, 287–88 n. 18 (5th Cir.1969); *Shaffield v. Northrop Worldwide Aircraft Services, Inc.,* 373 F.Supp. 937, 940 (M.D.Ala.1974). These cases did not address whether the requirements of § 2000e–5(f)(1) are jurisdictional. Instead, the premise of their holdings was that a plaintiff cannot be responsible for the acts or omissions of the EEOC or Attorney General and should therefore not be penalized for them.