THOMAS, Judge.
Mary Ann Wilkinson was employed by the Board of Dental Examiners of Alabama (“the Board”) for several years, until the Board terminated her employment in December 2009. During her tenure with the Board, Wilkinson was employed pursuant to yearly contracts. Wilkinson’s employment contracts provided that, the “sole remedy for the settlement of any and all disputes arising under the terms of this agreement shall be limited to the filing of a claim with the Board of Adjustment for the State of Alabama.”
In July 2010, Wilkinson sued the Board, seeking compensation she alleged was due her pursuant to her employment contracts. Wilkinson based her breach-of-contract claim on an audit of the Board covering the period between October 2003 and September 2007 conducted by the Department of Examiners of Public Accounts of Alabama, which was completed in February 2009. Wilkinson alleged that the audit had revealed that the Board had not paid Wilkinson for her attendance at Board meetings between October 2004 and September 2007 and that the Board had overpaid Wilkinson other compensation. According to Wilkinson’s complaint, the audit determined that the Board had underpaid Wilkinson $31,950 and had overpaid Wilkinson $21,787.92. Thus, Wilkinson contended in her complaint that the Board owed her $10,162.08. She also requested a further audit and compensation for her attendance at Board meetings between October 2007 and December 2009.
The Board filed a motion to dismiss Wilkinson’s complaint, in which it alleged that the complaint should be dismissed pursuant to Rule 12(b)(1), Ala. R. Civ. P., on the ground that the trial court lacked subject-matter jurisdiction because the Board, as a State agency, is immune from suit under Ala. Const.1901, Art. I, § 14; that the complaint should be dismissed pursuant to Rule 12(b)(6), Ala. R. Civ. P., because it failed to state a claim; and that the complaint should be dismissed pursuant to Rule 12(b)(3), Ala. R. Civ. P., for improper venue. The motion to dismiss contained legal argument concerning *364 only the .immunity issue and whether the employment contracts, which provided that Wilkinson’s sole remedy would lie with the Board of Adjustment, barred her complaint in the circuit court. Wilkinson responded to the Board’s motion to dismiss with a detailed brief,[1] arguing that the Board did not qualify for immunity under § 14 and that, therefore, her claim could not be heard by the Board of Adjustment. See Ala.Code 1975, § 41 — 9—62(b) (stating that the Board of Adjustment has no jurisdiction “to settle or adjust any matter or claim of which the courts of this state have or had jurisdiction”); see also Lee v. Cunningham, 234 Ala. 639, 641, 176 So. 477, 479 (1937); and Vaughan v. Sibley, 709 So.2d 482, 486 (Ala.Civ.App.1997) (“The Board of Adjustment has jurisdiction over claims against the state that are not justi-ciable in the courts because of the state’s constitutional immunity from being made a defendant.”). After the Board replied to Wilkinson’s response and after a hearing, the trial court dismissed Wilkinson’s complaint, finding in its order that the Board was a State agency because “the funds raised by the Board are appropriated by the State to the Board for use as provided by statute.” Wilkinson timely appealed to this court.
“In Newman v. Savas, 878 So.2d 1147[, 1148-49] (Ala.2003), this Court set out the standard of review of a ruling on a motion to dismiss for lack of subject-matter jurisdiction:
“ ‘A ruling on a motion to dismiss is reviewed without a presumption of correctness. Nance v. Matthews, 622 So.2d 297, 299 (Ala.1993). This Court must accept the allegations of the complaint as true. Creola Land Dev., Inc. v. Bentbrooke Housing, L.L.C., 828 So.2d 285, 288 (Ala.2002). Furthermore, in reviewing a ruling on a motion to dismiss we will not consider whether the pleader will ultimately prevail but whether the pleader may possibly prevail. Nance, 622 So.2d at 299.’ ”
Pontius v. State Farm Mut. Auto. Ins. Co., 915 So.2d 557, 563 (Ala.2005).
On appeal, Wilkinson challenges the Board’s entitlement to § 14 immunity.
“Section 14 of the Alabama Constitution provides ‘that the State of Alabama shall never be made a defendant in any court of law or equity.’ This court has held that the use of the word ‘State’ in Section 14 was intended to protect from suit only immediate and strictly governmental agencies of the State. Ex parte Board of School Commissioners of Mobile County, 230 Ala. 304, 161 So. 108 (1935).”
Thomas v. Alabama Mun. Elec. Auth., 432 So.2d 470, 480 (Ala.1983). Wilkinson argues that the Board is not an “immediate and strictly governmental agene[y] of the State,” and, therefore, that it is not entitled to § 14 immunity.
The Board relies on Delavan v. Board of Dental Examiners of Alabama, 620 So.2d 13, 18 (Ala.Civ.App.1992), and Vining v. Board of Dental Examiners of Alabama, 492 So.2d 607, 610 (Ala.Civ.App.1985). In both cases, this court described the Board *365 as a State agency. In neither case was the immunity of the Board an issue, and in neither case, as Wilkinson aptly points out, did this court undertake an analysis of the factors relevant to a determination whether the Board is an “agency” entitled to § 14 immunity. Thus, we agree with Wilkinson that our inquiry cannot end with Delavan and Vining.
Alabama courts have spent considerable time developing a method for determining when an entity created by the legislature is an “immediate and strictly governmental agenc[y] of the State” for purposes of § 14 immunity.
“Whether a lawsuit against a body created by legislative enactment is a suit against the state depends on the character of power delegated to the body, the relation of the body to the state, and the nature of the function performed by the body. All factors in the relationship must be examined to determine whether the suit is against an arm of the state or merely against a franchisee licensed for some beneficial purpose.”
Armory Comm’n of Alabama v. Staudt, 388 So.2d 991, 993 (Ala.1980) (citing State Docks Comm’n v. Barnes, 225 Ala. 403, 406-07, 143 So. 581, 584 (1932)). In Staudt, the supreme court was called upon to determine whether the Armory Commission of Alabama (“the commission”) was immune from a suit arising from a slip and fall on the premises of a National Guard Armory. Staudt, 388 So.2d at 992. The statute creating the Commission permitted it to incorporate and to sue or be sued in its own name. Id. However, the supreme court noted that the statute permitting the Commission to sue or be sued could not waive § 14 immunity if the Commission were a State agency entitled to such immunity. Id. The mere fact that the Commission was a corporate body was not determinative, said the court; instead, as quoted above, the court indicated that three main factors should be considered when determining whether a certain entity is immune from suit under § 14: “the character of power delegated to the body, the relation of the body to the state, and the nature of the function performed by the body.” Id. at 993. Because the State appropriated money to the Commission and because the governor was authorized to use other State funds to pay any expenses or obligations of the Commission if the appropriation were insufficient, the Staudt court determined that the Commission was, indeed, an agency of the State, in large part because a suit against the Commission had the ability to impact the State treasury. Id. at 993-94.
The Board relies on language quoted in Staudt, 388 So.2d at 993-94, which first appeared in White v. Alabama Insane Hospital, 138 Ala. 479, 482, 35 So. 454, 454 (1903), as a basis for its argument that it is entitled to § 14 immunity:
“There is a clear distinction between that class of incorporated institutions belonging [to] and controlled by the State and private incorporations, in the fact that the only property interest vested in the former belonged to the State. So, too, there is a distinction between this class, of incorporations and municipal corporations. Note on page 378 of 29 L.R. A.
“The power of the State to create a body corporate as its agent to carry on certain special kinds of work for its benefit or for the public interest can not be doubted. And where this power is exercised the institution thus established is in every sense a State institution and belongs to the State, although managed and its affairs administered under the supervision of trustees of the body corporate created for that purpose. Who doubts the right of the State to create a corporation for the management of an insane hospital, or a deaf and dumb asylum, or an institution *366 of learning? And where they are created, who has the property interest in these institutions? Clearly the State. In the exercise of its right of sovereignty it established them for public purposes; it donates the property or the funds to purchase it upon which they are built, [and] supplies the means by which they are maintained and operated. They have no capital stock, or shares held by individuals. Indeed, they have no membership or stockholders. They are not created for profit, but solely as public benefactors, the beneficiaries being the people who compose the State.”
White, 188 Ala. at 481-82, 35 So. at 454. In White, the supreme court determined that the Alabama Insane Hospital (“the hospital”) was immune from suit. The court described the Hospital as “a mere state agency created for the purpose of [ ] caring for and treating the unfortunate insane citizens of the State — a purely governmental function, wise and beneficial.” Id. at 483, 35 So. at 454. However, the court based its decision on the facts that the Hospital was an “incorporated institution [ ] belonging [to] and controlled by the State,” that the property on which it operated was owned by the State, and that the State provided the means for its operation. Id. at 481, 35 So. at 454.
Based on the above-quoted language from White, and the outcome in Staudt, the Board argues that it, like other agencies created for purposes benefiting the public interest, is immune under § 14 by virtue of its creation by the legislature. The Board, however, misunderstands the test enunciated in Staudt and followed since, which focuses on much more than whether the alleged “agency” was created by the legislature for some purpose of benefit to the public.
To be sure, the functions and purpose of an entity seeking immunity is an important factor under the Staudt test; however, our supreme court has explained that the main, but not sole, focus of the immunity determination must be whether the liability of the entity would result in liability for the State and thus potentially impact the State treasury. Ex parte Greater Mobile-Washington County Mental Health-Mental Retardation Bd., Inc., 940 So.2d 990, 1004 (Ala.2006) (“MH-MRB”). As explained in MH-MRB, in most every case decided after Staudt, the “treasury factor” has been, if not the determinative factor, one of the determinative factors in deciding whether an entity was a State agency entitled to § 14 immunity. MH-MRB, 940 So.2d at 1004. Immunity is designed to shield the State treasury, not to afford immunity to each and every entity created by statute, even if the purpose of the entity is to protect the public welfare.
Based on Staudt and as explained in MH-MRB, we must examine the “complete relationship between the State and the Board,” MH-MRB, 940 So.2d at 1005, and we begin by first noting that, despite the trial court’s finding that “the funds raised by the Board are appropriated by the State to the Board,” it does not appear that the Board receives any State funds at all. One of the statutes creating the Board does contain language indicating that all money collected by the Board is “appropriated” to the Board. Ala.Code 1975, § 34-9-41. However, that same statute further provides that the money collected by the Board for fees and other receipts is paid to the secretary-treasurer of the Board and is deposited in a bank selected by the members of the Board. Id. The money collected by the Board is never placed in the State treasury. Cf. Ala.Code 1975, § 34-43-14 (establishing a special revenue fund in the State treasury for the Alabama Board of Massage Therapy Fund). The Board, from all that appears in the record, is fully self-supporting, and *367 no actual appropriation of funds to the Board from the State appears to be required in order for it to perform its functions. Thus, the State does not “ ‘suppl[y] the means’ by which [the Board is] maintained and operated.” MH-MRB, 940 So.2d at 1004 (quoting White, 138 Ala. at 482, 35 So. at 454).
Another factor that the courts have found relevant to the immunity issue is whether the statute creating the entity specifically characterizes the entity as an agency of the State. MH-MRB, 940 So.2d at 1005. The statutes creating the Board do not. Likewise, we must look to the authority and power granted the Board and the level of State oversight of the Board and its functions. Id. at 1003. Nothing in the pertinent statutes or the record indicates that the State oversees the functions of the Board, which include, among other things, administering examinations to those seeking a license to practice dentistry or dental hygiene and investigating violations of laws or regulations governing the practice of dentistry and dental hygiene. Ala.Code 1975, §§ 34-9-43 & -43.1.[2] The Board does not appear to have any power to own or sell property in its own name, a factor that has been considered relevant in other cases. See, e.g., Rodgers v. Hopper, 768 So.2d 963, 967 (Ala.2000); Tallaseehatchie Creek Watershed Conservancy Dist. v. Allred, 620 *368 So.2d 628, 630 (Ala.1993). The Board can enter into certain contracts, including employment contracts relating to administrative and investigative services and contracts for legal services, a power that has been considered as indicium that the alleged agency is actually a separate entity. Rodgers, 768 So.2d at 967; Allred, 620 So.2d at 630.
Contracts for legal services, however, must be approved by the attorney general, a fact that indicates incidental control over that aspect of the Board’s powers. Ala. Code 1975, § 34-9-43(8)b. Additionally, the Board’s accounts must be audited by a certified public accountant of the State, and reports of the money received and disbursed and of the activities of the Board together with the audit must be filed with the State Finance Department. Ala.Code 1975, § 34-9-42. The level of oversight over the Board by the State would appear to be minimal, which, according to the MH-MRB court, is not indicative of State-agency status. MH-MRB, 940 So.2d at 1004.
Based on our consideration of the relevant factors under Staudt as applied in detail by our supreme court in MH-MRB, we conclude that the Board does not qualify as an “immediate and strictly governmental agencfy] of the State” and, therefore, that it is not entitled to § 14 immunity. Thomas, 432 So.2d at 480. Based on that conclusion, we must also agree with Wilkinson that, despite the language contained in her employment contracts, the Board of Adjustment is not the appropriate forum for her claims against the Board, because the Board of Adjustment provides a forum for addressing those claims otherwise barred by § 14 immunity and has absolutely no jurisdiction over claims or actions that may be brought in the courts of this State. § 41-9 — 62(b); see also Lee, 234 Ala. at 641, 176 So. at 479; and Vaughan, 709 So.2d at 486. Accordingly, we reverse the judgment of the trial court dismissing Wilkinson’s complaint against the Board, and we remand the cause for proceedings consistent with this opinion.
REVERSED AND REMANDED.
THOMPSON, P.J., and MOORE, J., concur.
PITTMAN and BRYAN, JJ„ dissent, without writings.

. Wilkinson also attached to her response documentary evidence indicating that the Board was self-supporting. However, that evidence did not convert the Board’s motion to dismiss into a motion for a summary judgment because the motion was, by and large, a motion seeking dismissal pursuant to Rule 12(b)(1) and attacking the trial court’s subject-matter jurisdiction based on the Board’s assertion of § 14 immunity. See Williams v. Skysite Commc'ns Corp., 781 So.2d 241, 245 (Ala.Civ.App.2000) (“Evidentiary matters may be freely submitted on a motion to dismiss that attacks jurisdiction.”). None of the arguments made by the Board was an argument that the complaint failed to state a claim.

. Section 34-9-43 provides:
"The board shall exercise, subject to this chapter, the following powers and duties:
"(1) Adopt rules for its government as deemed necessary and proper.
"(2) Prescribe rules for qualification and licensing of dentists and dental hygienists.
"(3) Conduct examinations to ascertain the qualification and fitness of applicants for licenses as dentists and dental hygienists.
"(4) Make rules and regulations regarding sanitation.
"(5) Formulate rules and regulations by which dental schools and colleges are approved, and formulate rules and regulations by which training, educational, technical, vocational, or any other institution which provides instruction for dental assistants, dental laboratory technicians, or any other paradental are approved.
"(6) Grant licenses, issue license certificates, teaching permits, and annual registration certificates in conformity with this chapter to such qualified dentists and dental hygienists.
"(7) Conduct hearings or proceedings to impose the penalties specified in Section 34-9-18.
"(8)a. Employ necessary persons to assist in performing its duties in the administration and enforcement of this chapter, and to provide offices, furniture, fixtures, supplies, printing, or secretarial service to these persons and expend necessary funds.
"b. Employ an attorney or attorneys, subject to the approval of the Attorney General, to advise and assist in the carrying out and enforcing of the provisions of this chapter. Provided, however, if the board contracts with an outside attorney to be general counsel to the board, that attorney or any member of a law firm with which he or she is associated shall not function as the board’s prosecutor at disciplinary hearings.
"(9)a. Investigate alleged violations of this chapter and institute or have instituted before the board or the proper court appropriate proceedings regarding the violation.
"b. Authorize and employ investigators who comply with the Peace Officers' Minimum Standards and Training Act to exercise the powers of a peace officer in investigating alleged violations of the drug or controlled substances laws by persons licensed pursuant to this chapter, including the powers of arrest and inspection of documents. These investigators shall not be paid a subsistence allowance by the board.
"(10) Adopt rules and regulations to implement this chapter.
"(11) Publish, on a quarterly basis, all minutes, except minutes of executive sessions, financial reports, schedules of meetings, including anticipated executive sessions, and other pertinent information *368 on the board's website no later than 90 days following the date of occurrence. In addition, publish annually the rules and regulations promulgated by the board, a copy of the Dental Practice Act, and a list of all persons licensed to practice under this chapter.
“(12) Attend meetings, seminars, work shops, or events that may improve the function and efficiency of the board or improve the ability of the board to enforce and administer this chapter.”
Section 34-9-43.1 provides further that the Board may employ attorneys, investigators, agents, and consultants and specifies what compensation consultants may receive.