[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 26, 2011
JOHN LEY
CLERK

No. 10-14282

D. C. Docket No. 2:10-cv-01850-WMA

NATALIE VERSIGLIO,

Plaintiff-Appellee,

versus

BOARD OF DENTAL EXAMINERS OF ALABAMA,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Alabama

(August 26, 2011)

Before DUBINA, Chief Judge, EDMONDSON and WILSON, Circuit Judges.

DUBINA, Chief Judge:

Appellant Board of Dental Examiners of Alabama (the "Board") appeals the district court's judgment denying it sovereign immunity protection as an arm of the state of Alabama. Appellee Natalie Versiglio contends that the Board is sufficiently independent from the state of Alabama, that it is not entitled to Eleventh Amendment immunity, and that her claim under the Fair Labor Standards Act should be allowed to continue. The Supreme Court in *Alden v. Maine* settled the matter of state employees suing under the FLSA, writing, "We hold that the powers delegated to Congress under Article I of the United States Constitution do not include the power to subject nonconsenting States to private suits for damages in state courts. We decide as well that the State of Maine has not consented to suits for overtime pay and liquidated damages under the FLSA." 527 U.S. 706, 712, 119 S. Ct. 2240, 2246 (1999). Thus, the question before this court is whether the Board is an arm of the state. For the reasons stated below, we conclude that at this time it is not and affirm the judgment of the district court.[1]

I.

In *Manders v. Lee*, the Eleventh Circuit noted that "[i]t is also well-settled that Eleventh Amendment immunity bars suits brought in federal court when the

---

[1]"The grant or denial of a state's sovereign immunity defense is an issue of law subject to de novo review by this court." *Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 344 F.3d 1288, 1290 (11th Cir. 2003).

State itself is sued and when an 'arm of the State' is sued." 338 F.3d 1304, 1308 (11th Cir. 2003). Whether an agency qualifies as an arm of the state is a federal question with a federal standard, but whether that standard is met is determined by carefully reviewing how the agency is defined by state law. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 n.5, 117 S. Ct. 900, 904 n.5 (1997) ("Ultimately, of course, the question whether a particular state agency has the same kind of independent status as a county or is instead an arm of the State, and therefore 'one of the United States' within the meaning of the Eleventh Amendment, is a question of federal law. But that federal question can be answered only after considering the provisions of state law that define the agency's character."); *Tuveson v. Fla. Governor's Council on Indian Affairs, Inc.*, 734 F.2d 730, 732 (11th Cir. 1984) ("The state law provides assistance in ascertaining whether the state intended to create an entity comparable to a county or municipality or one designed to take advantage of the state's Eleventh Amendment immunity."). States have "extremely wide latitude in determining their forms of government and how state functions are performed." *Abusaid v. Hillsborough Cnty. Bd. of Cnty. Comm'rs*, 405 F.3d 1298, 1303 (11th Cir. 2005) (quotation marks omitted). But if a state creates an institution in such a way that gives it independence, "[w]hatever may have been the state's reason for doing it [that] way, it must live with the

3

consequences. It cannot claim an immunity based on a condition which it itself sought to avoid." *Williams v. Eastside Mental Health Ctr., Inc.*, 669 F.2d 671, 678 (11th Cir. 1982). In conducting our analysis, this court "has stated the most important factor is how the entity has been treated by the state courts." *Tuveson*, 734 F.2d at 732 (citing *Huber, Hunt & Nichols, Inc. v. Architectural Stone Co.,* 625 F.2d 22, 25 (5th Cir.1980)).[2]

## II.

In *Miccosukee Tribe of Indians v. Florida State Athletic Commission*, this court set forth a four part test to guide our analysis of whether state law establishes an agency as an arm of the state. 226 F.3d 1226 (11th Cir. 2000). *Miccosukee* explains, "In determining whether the Eleventh Amendment provides immunity to a particular entity, this court examines the following factors: (1) how state law defines the entity; (2) what degree of control the state maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Id.* at 1231. Applying this test, the court in *Miccosukee* determined that the Florida State Athletic Commission constituted an arm of the state and was entitled to Eleventh Amendment immunity.

---

[2]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981.

Initially, the Board appears to have a viable argument that it is an arm of the state under the *Miccosukee* test. First, Alabama law suggests that the Board is an arm of the state. In creating the Board, the legislature made specific findings that "the practice of dentistry affects the public health, safety and welfare and should be subject to regulation." ALA. CODE § 34-9-2(a). These findings indicate that the legislature saw the Board as an arm of the state, noting, "The licensure *by this state* of nonresident dentists who engage in dental practice within this state is within the public interest." *Id.* § 34-9-2(c) (emphasis added). A regulatory body is defined under the state's immunity provision as "[a] state agency which issues regulations in accordance with the Alabama Administrative Procedure Act or a state, county, or municipal department, agency, board, or commission which controls, according to rule or regulation, the activities, business licensure, or functions of any group, person, or persons." *Id.* § 6-5-340(a)(7). The Alabama Administrative Procedure Act governs "[e]very state agency having express statutory authority to promulgate rules and regulations." *Id.* § 41-22-2(d). The Board is granted the authority to make such rules and regulations in Section 34-9-43 of the Alabama Code.

Moreover, while the Board has a degree of independence, the statutory scheme that created it allows the state to maintain control over its operations.

*Miccosukee* recognizes that the regulatory abilities inherent in a licensing agency—including quasi-legislative and quasi-judicial functions—does not render it independent of the state. In *Miccosukee,* the court noted that the Commission's rule-making functions were constrained by legislative guidelines. 226 F.3d at 1232. The Board is similarly designed. Section 34-9-43 grants the Board power to promulgate regulations, but only as provided by Chapter 9 of the Alabama Code. For example, the Code, and not the Board, sets forth application categories, Section 34-9-10, registration procedures and deadlines, Section 34-9-15, a range of fees the Board may charge, Section 34-9-16, and examination requirements, Section 34-9-26, among others.

In *Miccosukee*, the court noted that the Athletic Commission was not permitted unfettered discretion to suspend or revoke licenses, but rather "the state allows the Commission to suspend or revoke a license for a limited number of grounds." 226 F.3d at 1232. Similarly, the Board may only invoke disciplinary action against a licensee subject to Section 34-9-18, which sets forth seventeen grounds for Board action and nine different sanctions the Board may proscribe based on those grounds. Section 34-9-18(d) requires a hearing before any disciplinary action can be taken, and Section 34-9-25 allows for appeal to the circuit courts on the grounds that Board action is either illegal or arbitrary. The

Board is allowed to "request assistance from the Attorney General" in enforcing its duties, and all "prosecuting attorneys throughout the state shall assist the board, upon request of either, in any action for injunction or prosecution without charge or additional compensation." ALA. CODE § 34-9-43.1(a).

One area in which the Board is more independent than the Commission in *Miccosukee* is the composition of the Board itself. In *Miccosukee*, the Commission was appointed by the Governor, subject to confirmation by the Senate. 226 F.3d at 1232–33. We noted that "[s]tate authority over the appointment of agency members lends support to finding that the agency is an arm of the state," but we did not find the appointment procedure to be definitive. *Id.* Here, while the state does not select the Board, it has established detailed guidelines for how the members are to be selected. *See* ALA. CODE § 34-9-40 ("The board shall consist of six dentists who shall be selected in the method set forth herein all of whom having been actively engaged in the practice of dentistry in the State of Alabama for at least five years next preceding the date of their election and one dental hygienist elected at-large and as provided in subsection (b). Each member of the board shall be a citizen of this state.").

III.

7

Appellee argues that a strong point in favor of the Board's independence from the state is the fact that it derives its funds from licensing fees and can spend its money pursuant to its own discretion. This position was largely rejected in *Miccosukee* where this court found that it is the amount of control over the agency's fiscal life, not the source of its funding, that is most pertinent. 226 F.3d at 1233; *Fouche v. Jekyll Island-State Park Auth.*, 713 F.2d 1518, 1520–21 (11th Cir. 1983) ("Even though the Park Authority can raise money through the issuance of bonds and from the operation of Jekyll Island State Park, its fiscal life is controlled by the state."). Furthermore, while the licensing fees paid to the Board never enter the state treasury, this appears to be little more than an accounting decision by the state. The Board's enabling legislation recognizes that the fees paid to the Board are controlled by the state, specifically authorizing, "All money, including license fees, annual renewal license certificate fees, examination fees and any and all other fees and receipts . . . are hereby appropriated to the Board of Dental Examiners to be used as herein provided." ALA. CODE § 34-9-41. Finally, the Board is only able to collect licensing fees because it is imbued with the power of the state. Without its authorizing legislation and enforcement powers granted therein, the Board would have no ability to collect licensing fees at all.

The Board does not have unfettered discretion to spend its funds. Rather, the Board is only "authorized to expend such funds as shall be necessary to enforce the provisions of this chapter; to pay salaries, expenses and other costs herein provided; to promote the arts and science of dentistry; and for such other purposes as the board shall consider to be in the best interest of dentistry in this state." *Id.* § 34-9-41. To ensure compliance with this requirement, "[t]he secretary-treasurer of the board shall compile an annual report which shall contain an itemized statement of all money received and disbursed and a summary of the official acts of the board during the preceding year, and the report shall have attached thereto a certified report and audit made by a certified public accountant of the State of Alabama." *Id.* § 34-9-42. In *Fouche*, this court discussed the significance of such an audit, writing, "[The Park Authority's] budget is submitted to the General Assembly. All of its financial records must be submitted annually to the state auditor for inspection." 713 F.2d at 1520–21. Finally, the funds raised by the Board are held in trust. In the event that the state legislature decides to terminate the Board—a power which itself provides strong evidence that the Board is an arm of the state—"all unexpended funds revert[] back to the state fund from which its appropriation was made." ALA. CODE § 41-20-12. Since the fees

9

were simply appropriated to the Board and did not come from a specific state fund, presumably they would return to the state treasury.

In the past, the court has described the extent to which a lawsuit implicates the State treasury as nearly dispositive. *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 208 F.3d 1308, 1311 (11th Cir. 2000); *Fouche*, 713 F.2d at 1521 ("The Eleventh Amendment protects the sovereignty of the state by prohibiting suits when recovery would be paid from state funds."). Appellee paints this as the strongest factor in her favor, arguing, "There is no evidence that the State of Alabama risks losing any money from this litigation." (Appellee's Brief at 7.) This statement is not correct.

First, the Board's funds are state funds. As noted above, while the fees collected by the Board are not derived directly from the state, they are held in trust and can only be used in ways authorized by state statute. More importantly, we need not speculate about the ultimate responsibility for the Board's debts. The state code provides that when a state agency such as the Board is terminated, "The state Comptroller is authorized to draw warrants on the State Treasury for any outstanding accounts which are legally owed but unsettled by any agency which has ceased functioning pursuant to this chapter. Such claims must be presented and paid in the same manner as required by law for any claim for the payment of

state funds." ALA. CODE § 41-20-14. Thus, if this lawsuit were allowed to continue, it appears the state of Alabama would be ultimately responsible for any judgment entered therein.

IV.

Despite the strength of the Board's claim of sovereign immunity under the *Miccosukee* test, one factor weighs heavily against it. On April 1, 2011, the Court of Civil Appeals of Alabama released its opinion in *Wilkinson v. Board of Dental Examiners of Alabama*, 2011 WL 1205669, 2011 Ala. Civ. App. LEXIS 88 (Ala. Civ. App. April 1, 2011).[3] In its opinion, the state appeals court conducted the first substantial analysis by a state court of the Board's status as a state agency.[4] The Board argued that it was immune from suit in state court pursuant to Article 1, Section 14 of the Alabama Constitution. That section provides that "the State of Alabama shall never be made a defendant in any court of law or equity." Alabama courts have construed this immunity to extend to arms of the state. *Armory Comm'n v. Staudt*, 388 So. 2d 991, 993 (Ala. 1980). The test for entities seeking

---

[3]We note that although the attorneys of record in *Wilkinson* are the same as in our present case, no party saw fit to inform us of the state court's decision.

[4]Prior to this decision, the two state courts to address the issue had seemingly found, if only in passing, that the Board was an arm of the state. *Vining v. Bd. of Dental Exam'rs*, 492 So. 2d 607, 610 (Ala. Civ. App. 1985) ("The Dental Board is a state agency. Hence, the Pinkerton agents were agents of the state."); *Delavan v. Bd. of Dental Exam'rs*, 620 So. 2d 13, 18 (Ala. Civ. App. 1992) (citing *Vining*).

11

immunity is much like this court's test:  whether "a lawsuit against a body created by legislative enactment is a suit against the state depends on the character of power delegated to the body, the relation of the body to the state, and the nature of the function performed by the body."  *Id.*  Applying this test, the Court of Civil Appeals examined many of the provisions discussed above, concluding that the Board is not an arm of the state and thus "is not entitled to § 14 immunity." *Wilkinson*, 2011 Ala. Civ. App. Lexis 88 at \*16, 2011 WL 1205669 at \*5.

This court gives great deference to how state courts characterize the entity in question.  This practice is in keeping with the ordinary deference granted state courts when they interpret matters of state concern.  *See Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 710 F.2d 678, 690 (11th Cir. 1983) ("A federal court applying state law is bound to adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise.").  Federal courts are often more skeptical of state court decisions involving issues of sovereign immunity, as otherwise "[a] state would have too much self-interest in extending sovereign immunity to as many of its agencies and corporate creations as possible." *Miller-Davis Co. v. Illinois State Toll Highway Auth.*, 567 F.2d 323, 330 (7th Cir. 1977).  However, that concern is obviated when, as here, the state court finds that an entity is not an

12

arm of the state. *Id.* ("Especially when a state supreme court does not extend immunity but, rather, holds that an entity is not to be deemed the state for purposes of sovereign immunity, we think the federal courts must pay careful attention to the state opinion.").

Finding that the Board is entitled to sovereign immunity would require this court to interpret Alabama law in a way that is diametrically opposed to the findings of the highest state court to consider the issue. Such a ruling would also create the incongruous result of having a "state agency" that is immune from suit under federal law but not under state law. *Cf. Alden*, 527 U.S. at 793 n.29, 119 S. Ct. at 2285 n.29 (noting in a different context that the Framers of the Eleventh Amendment "would have considered it absurd that States immune in federal court could be subjected to suit in their own courts"). As such, we believe that a holding by this court that the Board is an arm of the state for purposes of sovereign immunity would be inappropriate.

## V.

For the aforementioned reasons, we affirm the district court's finding that the Board is not entitled to sovereign immunity protection as an arm of the state of Alabama.

**AFFIRMED.**