[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-14282

_____

D. C. Docket No. 2:10-cv-01850-WMA

NATALIE VERSIGLIO,

Plaintiff-Appellee,

versus

BOARD OF DENTAL EXAMINERS OF ALABAMA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(July 13, 2012)

**ON PETITION FOR REHEARING**

Before DUBINA, Chief Judge, EDMONDSON and WILSON, Circuit Judges.

DUBINA, Chief Judge:

There is presently pending in this case a petition for rehearing filed by the Appellant Board of Dental Examiners of Alabama (the "Board"). We grant the Board's petition for rehearing, vacate our prior panel opinion in this case, issued on August 26, 2011, and published at 651 F.3d 1272, and substitute the following opinion in lieu thereof. After a recent decision by the Alabama Supreme Court, we now reverse the district court's judgment finding that the Board does not constitute an arm of the State of Alabama and is therefore not entitled to sovereign immunity from suits.

In the present case, the Board appeals the district court's judgment denying it sovereign immunity protection as an arm of the State of Alabama. Appellee Natalie Versiglio contends that the Board is sufficiently independent from the State of Alabama that it is not entitled to Eleventh Amendment immunity and that her claim under the Fair Labor Standards Act should be allowed to continue. Thus, the question before this court is whether the Board is an arm of the state and protected from suit by sovereign immunity. Based on a recent decision by the Alabama Supreme Court, *Wilkinson v. Bd. of Dental Exam'rs of Ala.*, __ So. 3d.

2

__, 2012 WL 1890677, 2012 Ala. LEXIS 69 (Ala. May 25, 2012), we conclude

that it is and we reverse the judgment of the district court.[1]

## I.

In *Manders v. Lee*, the Eleventh Circuit noted that "[i]t is also well-settled

that Eleventh Amendment immunity bars suits brought in federal court when the

State itself is sued and when an 'arm of the State' is sued." 338 F.3d 1304, 1308

(11th Cir. 2003). Whether an agency qualifies as an arm of the state is a federal

question with a federal standard, but whether that standard is met will be

determined by carefully reviewing how the agency is defined by state law.

*Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 n.5, 117 S. Ct. 900, 904 n.5

(1997) ("Ultimately, of course, the question whether a particular state agency has

the same kind of independent status as a county or is instead an arm of the State,

and therefore 'one of the United States' within the meaning of the Eleventh

Amendment, is a question of federal law. But that federal question can be

answered only after considering the provisions of state law that define the

agency's character."); *Tuveson v. Fla. Governor's Council on Indian Affairs, Inc.*,

734 F.2d 730, 732 (11th Cir. 1984) ("The state law provides assistance in

---

[1] "The grant or denial of a state's sovereign immunity defense is an issue of law subject to *de novo* review by this court." *Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 344 F.3d 1288, 1290 (11th Cir. 2003) (per curiam).

ascertaining whether the state intended to create an entity comparable to a county or municipality or one designed to take advantage of the state's Eleventh Amendment immunity.").  States have "extremely wide latitude in determining their forms of government and how state functions are performed." *Abusaid v. Hillsborough Cnty. Bd. of Cnty. Comm'rs*, 405 F.3d 1298, 1303 (11th Cir. 2005). But if a state creates an institution in such a way that gives it independence, "[w]hatever may have been the state's reason for doing it [that] way, it must live with the consequences.  It cannot claim an immunity based on a condition which it itself sought to avoid." *Williams v. Eastside Mental Health Ctr, Inc.*, 669 F.2d 671, 678 (11th Cir. 1982).  In conducting our analysis, this court "has stated the most important factor is how the entity has been treated by the state courts." *Tuveson*, 734 F.2d at 732 (citing *Huber, Hunt & Nichols, Inc. v. Architectural Stone Co.,* 625 F.2d 22, 25 (5th Cir.1980)[2]).

## II.

When this court heard oral argument, the highest court in the State of Alabama to analyze the issue of whether the Board constitutes an arm of the state was the Court of Civil Appeals of Alabama, which found that the Board was not

---

[2]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981.

an arm of the state and not entitled to immunity from suit in Alabama state courts. *See Wilkinson v. Bd. of Dental Exam'rs of Ala.*, __ So. 3d __, 2011 WL 1205669, at \*5, 2011 Ala. Civ. App. LEXIS 88, at \*16 (Ala. Civ. App. Apr. 1, 2011), *rev'd Wilkinson*, __ So. 3d. __, 2012 WL 1890677, 2012 Ala. LEXIS 69.  Based on this decision, we similarly held that the Board was not an arm of the state and was not entitled to immunity from suit in federal courts.  *See Versiglio v. Bd. of Dental Exam'rs of Ala.*, 651 F.3d 1272 (11th Cir. 2011).  However, once this court became aware of the Alabama Supreme Court's decision to grant the Board's petition for a writ of certiorari, we withheld issuance of our mandate that could have resulted in the incongruous result of having a "state agency" that is immune from suit under state law but not federal law. *Cf. Alden v. Maine*, 527 U.S. 706, 793 n.29, 119 S. Ct. 2240, 2285 n.29 (noting in a different context that the Framers of the Eleventh Amendment "would have considered it absurd that States immune in federal court could be subjected to suit in their own courts").

## III.

On May 25, 2012, the Alabama Supreme Court issued a decision holding that the Board is in fact an arm of the state and is entitled to immunity from suits in Alabama state courts.  *Wilkinson*, __ So. 3d. __, 2012 WL 1890677, 2012 Ala.

LEXIS 69.[3]  In so holding, the Alabama Supreme Court conclusively held "that the Board is 'an arm of the state' rather than a mere 'franchisee licensed for some beneficial purpose.' . . . Therefore, the Board . . . is entitled to immunity."  *Id*. at __, 2012 WL 1890677 at *17, 2012, Ala. LEXIS 69 at *47–48.

This court gives great deference to how state courts characterize the entity in question.  This practice is in keeping with the ordinary deference granted state courts when they interpret matters of state concern.  *See Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 710 F.2d 678, 690 (11th Cir. 1983) ("A federal court applying state law is bound to adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise.").  Finding now that the Board is not entitled to sovereign immunity would require this court to interpret Alabama law in a way that is diametrically opposed to the findings of the highest state court to consider the issue.  We decline to do so.

## IV.

For the aforementioned reasons, we reverse the district court's judgment finding that the Board is not entitled to sovereign immunity protection as an arm of the State of Alabama.

---

[3] We have attached the Alabama Supreme Court's opinion as an appendix to this opinion.

6

**REVERSED.**

7

# APPENDIX

# SUPREME COURT OF ALABAMA

# OCTOBER TERM, 2011-2012

_____

# 1100993

_____

# Ex parte Board of Dental Examiners of Alabama

# PETITION FOR WRIT OF CERTIORARI

# TO THE COURT OF CIVIL APPEALS

## (In re:  Mary Ann Wilkinson

## v.

## Board of Dental Examiners of Alabama)

## (Jefferson Circuit Court, CV-10-902491;

## Court of Civil Appeals, 2100175)

8

1100993

WISE, Justice.

We granted the petition for a writ of certiorari filed by the Board of Dental

Examiners of Alabama ("the Board") seeking review of the decision of the Court of

Civil Appeals in Wilkinson v. Board of Dental Examiners of Alabama, [Ms. 2100175,

April 1, 2011] ___ So. 3d ___ (Ala. Civ. App. 2011), in which the Court of Civil

Appeals held that the Board was not a State agency and thus was not entitled to

immunity pursuant to Art. I, § 14, Ala. Const. 1901.  For the reasons set forth below,

we reverse the judgment of the Court of Civil Appeals.

## I.  Facts and Procedural History

The pertinent facts are stated in the Court of Civil Appeals' opinion in

Wilkinson:

> "Mary Ann Wilkinson was employed by the Board of Dental
> Examiners of Alabama ('the Board') for several years, until  the Board
> terminated her employment in December 2009.  During her tenure with
> the Board, Wilkinson was employed pursuant to yearly contracts.
> Wilkinson's employment contracts provided that the 'sole remedy for the
> settlement of any and all disputes arising under the terms of this
> agreement shall be limited to the filing of a claim with the Board of
> Adjustment for the State of Alabama.'

> "In July 2010, Wilkinson sued the Board, seeking compensation
> she alleged was due her pursuant to her employment contracts.
> Wilkinson based her breach-of-contract claim on an audit of the Board
> covering the period between October 2003 and September 2007
> conducted by the Department of Examiners of Public Accounts of

9

1100993

Alabama, which was completed in February 2009. Wilkinson alleged that the audit had revealed that the Board had not paid Wilkinson for her attendance at Board meetings between October 2004 and September 2007 and that the Board had overpaid Wilkinson other compensation. According to Wilkinson's complaint, the audit determined that the Board had underpaid Wilkinson $31,950 and had overpaid Wilkinson $21,787.92. Thus, Wilkinson contended in her complaint that the Board owed her $10,162.08. She also requested a further audit and compensation for her attendance at Board meetings between October 2007 and December 2009.

"The Board filed a motion to dismiss Wilkinson's complaint, in which it alleged that the complaint should be dismissed pursuant to Rule 12(b)(1), Ala. R. Civ. P., on the ground that the trial court lacked subject-matter jurisdiction because the Board, as a State agency, is immune from suit under Ala. Const. 1901, Art. I, § 14; that the complaint should be dismissed pursuant to Rule 12(b)(6), Ala. R. Civ. P., because it failed to state a claim; and that the complaint should be dismissed pursuant to Rule 12(b)(3), Ala. R. Civ. P., for improper venue. The motion to dismiss contained legal argument concerning only the immunity issue and whether the employment contracts, which provided that Wilkinson's sole remedy would lie with the Board of Adjustment, barred her complaint in the circuit court. Wilkinson responded to the Board's motion to dismiss with a detailed brief,[1] arguing that the Board did not qualify for immunity under § 14 and that, therefore, her claim could not be heard by the Board of Adjustment. See Ala. Code 1975, § 41-9-62(b) (stating that the Board of Adjustment has no jurisdiction 'to settle or adjust any matter or claim of which the courts of this state have or had jurisdiction'); see also Lee v. Cunningham, 234 Ala. 639, 641, 176 So. 477, 479 (1937); and Vaughan v. Sibley, 709 So. 2d 482, 486 (Ala. Civ. App. 1997) ('The Board of Adjustment has jurisdiction over claims against the state that are not justiciable in the courts because of the state's constitutional immunity from being made a defendant.'). After the Board replied to Wilkinson's response and after a hearing, the trial court dismissed Wilkinson's complaint, finding in its order that the Board was a State agency because 'the funds raised by the Board are

10

1100993

appropriated by the State to the Board for use as provided by statute.' Wilkinson timely appealed to this court.

"_____

"[1]Wilkinson also attached to her response documentary evidence indicating that the Board was self-supporting. However, that evidence did not convert the Board's motion to dismiss into a motion for a summary judgment because the motion was, by and large, a motion seeking dismissal pursuant to Rule 12(b)(1) and attacking the trial court's subject-matter jurisdiction based on the Board's assertion of § 14 immunity. See Williams v. Skysite Commc'ns Corp., 781 So. 2d 241, 245 (Ala. Civ. App. 2000) ('Evidentiary matters may be freely submitted on a motion to dismiss that attacks jurisdiction.'). None of the arguments made by the Board was an argument that the complaint failed to state a claim."

___ So. 3d at ___.

Wilkinson's appeal to the Court of Civil Appeals challenged the Board's entitlement to immunity under § 14. In addressing that issue, the Court of Civil Appeals stated:

"'Section 14 of the Alabama Constitution provides "that the State of Alabama shall never be made a defendant in any court of law or equity." This court has held that the use of the word "State" in Section 14 was intended to protect from suit only immediate and strictly governmental agencies of the State. Ex parte Board of School Commissioners of Mobile County, 230 Ala. 304, 161 So. 108 (1935).'

"Thomas v. Alabama Mun. Elec. Auth., 432 So. 2d 470, 480 (Ala. 1983). Wilkinson argues that the Board is not an 'immediate and strictly

11

1100993

governmental agenc[y] of the State,' and, therefore, that it is not entitled to § 14 immunity.

"The Board relies on Delavan v. Board of Dental Examiners of Alabama, 620 So. 2d 13, 18 (Ala. Civ. App. 1992), and Vining v. Board of Dental Examiners of Alabama, 492 So. 2d 607, 610 (Ala. Civ. App. 1985). In both cases, this court described the Board as a State agency. In neither case was the immunity of the Board an issue, and in neither case, as Wilkinson aptly points out, did this court undertake an analysis of the factors relevant to a determination whether the Board is an 'agency' entitled to § 14 immunity. Thus, we agree with Wilkinson that our inquiry cannot end with Delavan and Vining."

After discussing this Court's decisions in Armory Commission of Alabama v. Staudt, 388 So. 2d 991, 993 (Ala. 1980); White v. Alabama Insane Hospital, 138 Ala. 479, 482, 35 So. 454, 454 (1903); Ex parte Greater Mobile-Washington County Mental Health-Mental Retardation Board, Inc., 940 So. 2d 990, 1004 (Ala. 2006) ("MH-MRB"), the Court of Civil Appeals stated:

"Based on the above-quoted language from White, and the outcome in Staudt, the Board argues that it, like other agencies created for purposes benefiting the public interest, is immune under § 14 by virtue of its creation by the legislature. The Board, however, misunderstands the test enunciated in Staudt and followed since, which focuses on much more than whether the alleged 'agency' was created by the legislature for some purpose of benefit to the public.

"To be sure, the functions and purpose of an entity seeking immunity is an important factor under the Staudt test; however, our supreme court has explained that the main, but not sole, focus of the immunity determination must be whether the liability of the entity would result in liability for the State and thus potentially impact the State

12

1100993

treasury. Ex parte Greater Mobile-Washington County Mental Health-Mental Retardation Bd., Inc., 940 So. 2d 990, 1004 (Ala. 2006) ('MH-MRB'). As explained in MH-MRB, in most every case decided after Staudt, the 'treasury factor' has been, if not the determinative factor, one of the determinative factors in deciding whether an entity was a State agency entitled to § 14 immunity. MH-MRB, 940 So. 2d at 1004. Immunity is designed to shield the State treasury, not to afford immunity to each and every entity created by statute, even if the purpose of the entity is to protect the public welfare.

"Based on Staudt and as explained in MH-MRB, we must examine the 'complete relationship between the State and the Board,' MH-MRB, 940 So. 2d at 1005, and we begin by first noting that, despite the trial court's finding that 'the funds raised by the Board are appropriated by the State to the Board,' it does not appear that the Board receives any State funds at all. One of the statutes creating the Board does contain language indicating that all money collected by the Board is 'appropriated' to the Board. Ala. Code 1975, § 34-9-41. However, that same statute further provides that the money collected by the Board for fees and other receipts is paid to the secretary-treasurer of the Board and is deposited in a bank selected by the members of the Board. Id. The money collected by the Board is never placed in the State treasury. Cf. Ala. Code 1975, § 34-43-14 (establishing a special revenue fund in the State treasury for the Alabama Board of Massage Therapy Fund). The Board, from all that appears in the record, is fully self-supporting, and no actual appropriation of funds to the Board from the State appears to be required in order for it to perform its functions. Thus, the State does not '"suppl[y] the means" by which [the Board is] maintained and operated.' MH-MRB, 940 So. 2d at 1004 (quoting White, 138 Ala. at 482, 35 So. at 454).

"Another factor that the courts have found relevant to the immunity issue is whether the statute creating the entity specifically characterizes the entity as an agency of the State. MH-MRB, 940 So. 2d at 1005. The statutes creating the Board do not. Likewise, we must look to the authority and power granted the Board and the level of State

13

1100993

oversight of the Board and its functions. Id. at 1003. Nothing in the pertinent statutes or the record indicates that the State oversees the functions of the Board, which include, among other things, administering examinations to those seeking a license to practice dentistry or dental hygiene and investigating violations of laws or regulations governing the practice of dentistry and dental hygiene. Ala. Code 1975, §§ 34-9-43 & -43.1. The Board does not appear to have any power to own or sell property in its own name, a factor that has been considered relevant in other cases. See, e.g., Rodgers v. Hopper, 768 So. 2d 963, 967 (Ala. 2000); Tallaseehatchie Creek Watershed Conservancy Dist. v. Allred, 620 So. 2d 628, 630 (Ala. 1993). The Board can enter into certain contracts, including employment contracts relating to administrative and investigative services and contracts for legal services, a power that has been considered as indicium that the alleged agency is actually a separate entity. Rodgers, 768 So. 2d at 967; Allred, 620 So. 2d at 630.

"Contracts for legal services, however, must be approved by the attorney general, a fact that indicates incidental control over that aspect of the Board's powers. Ala. Code 1975, § 34-9-43(8)b. Additionally, the Board's accounts must be audited by a certified public accountant of the State, and reports of the money received and disbursed and of the activities of the Board together with the audit must be filed with the State Finance Department. Ala. Code 1975, § 34-9-42. The level of oversight over the Board by the State would appear to be minimal, which, according to the MH-MRB court, is not indicative of State-agency status. MH-MRB, 940 So. 2d at 1004.

"Based on our consideration of the relevant factors under Staudt as applied in detail by our supreme court in MH-MRB, we conclude that the Board does not qualify as an 'immediate and strictly governmental agenc[y] of the State' and, therefore, that it is not entitled to § 14 immunity. Thomas[ v. Alabama Mun. Elec. Auth.], 432 So. 2d [470] at 480 [(Ala. 1983)]. Based on that conclusion, we must also agree with Wilkinson that, despite the language contained in her employment contracts, the Board of Adjustment is not the appropriate forum for her

14

1100993

> claims against the Board, because the Board of Adjustment provides a forum for addressing those claims otherwise barred by § 14 immunity and has absolutely no jurisdiction over claims or actions that may be brought in the courts of this State.  § 41-9-62(b); see also Lee[ v. Cunningham], 234 Ala. [639] at 641, 176 So. [477] at 479 [(1937)]; and Vaughan[ v. Sibley], 709 So. 2d [482] at 486 [(Ala. Civ. App. 1997)]."

___ So. 3d at ___ (footnote omitted).

In its petition for a writ of certiorari, the Board argues that this case presents an issue of first impression regarding whether the Board is a State agency that is entitled to § 14 immunity and whether the Board was entitled to invoke the jurisdiction of the Board of Adjustment.

## II. Standard of Review

> "In reviewing a decision of the Court of Civil Appeals on a petition for a writ of certiorari, this Court 'accords no presumption of correctness to the legal conclusions of the intermediate appellate court. Therefore, we must apply de novo the standard of review that was applicable in the Court of Civil Appeals.' Ex parte Toyota Motor Corp., 684 So. 2d 132, 135 (Ala. 1996)."

Ex parte Exxon Mobil Corp., 926 So. 2d 303, 308 (Ala. 2005).

The Court of Civil Appeals stated the following regarding the standard of review applicable in that court:

> "'In Newman v. Savas, 878 So. 2d 1147[, 1148-49] (Ala. 2003), this Court set out the standard of review of a ruling on a motion to dismiss for lack of subject-matter jurisdiction:

15

1100993

> """A ruling on a motion to dismiss is reviewed without a presumption of correctness. Nance v. Matthews, 622 So. 2d 297, 299 (Ala. 1993). This Court must accept the allegations of the complaint as true. Creola Land Dev., Inc. v. Bentbrooke Housing, L.L.C., 828 So. 2d 285, 288 (Ala. 2002). Furthermore, in reviewing a ruling on a motion to dismiss we will not consider whether the pleader will ultimately prevail but whether the pleader may possibly prevail. Nance, 622 So. 2d at 299."'

"Pontius v. State Farm Mut. Auto. Ins. Co., 915 So. 2d 557, 563 (Ala. 2005)."

Wilkinson, ___ So. 3d at ___.

### III.  Discussion

#### A.

The Board argues that the Court of Civil Appeals erred when it concluded that the Board was not a State agency that is entitled to § 14 immunity.  In Staudt, 388 So. 2d at 993, this Court stated:

> "Whether a lawsuit against a body created by legislative enactment is a suit against the state depends on [1] the character of power delegated to the body, [2] the relation of the body to the state, and [3] the nature of the function performed by the body.  All factors in the relationship must be examined to determine whether the suit is against an arm of the state or merely against a franchisee licensed for some beneficial purpose. State Docks Commission v. Barnes, 225 Ala. 403, 406-07, 143 So. 581, 584 (1932)."

16

1100993

### 1. Character of Power Delegated to the Body

In determining whether the Board is a State agency that is entitled to § 14 immunity, we must first look at the character of power delegated to the Board. In Smeller v. Oregon State Board of Dental Examiners, 294 U.S. 608, 611 (1935), the United States Supreme Court stated:

"That the state may regulate the practice of dentistry, prescribing the qualifications that are reasonably necessary, and to that end may require licenses and establish supervision by an administrative board, is not open to dispute. Douglas v. Noble, 261 U.S. 165 [(1923)]; Graves v. State of Minnesota, 272 U.S. 425, 427 [(1926)]. The state may thus afford protection against ignorance, incapacity and imposition. Dent v. West Virginia, 129 U.S. 114, 122 [(1889)]; Graves v. State of Minnesota, supra. We have held that the state may deny to corporations the right to practice, insisting upon the personal obligations of individuals (State Board of Dental Examiners v. Miller, 90 Colo. 193, 8 P. (2d) 699 [(1932)]; Miller v. State Board of Dental Examiners, 287 U.S. 563 [(1932)]), and that it may prohibit advertising that tends to mislead the public in this respect. Dr. Bloom Dentist, Inc. v. Cruise, 259 N.Y. 358, 363, 182 N.E. 16 [(1932)]; Id., 288 U.S. 588 [(1933)]."

Section 34-9-2, Ala. Code 1975, provides:[4]

"(a) The Legislature hereby declares that the practice of dentistry and the practice of dental hygiene affect the public health, safety, and welfare and should be subject to regulation. It is further declared to be a matter of public interest and concern that the dental profession merit and receive the confidence of the public and that only qualified dentists

---

[4]Many of the sections in Chapter 9 of Title 34, "Dentists and Dental Hygienists," were amended effective September 1, 2011. Unless otherwise indicated, we have quoted from the amended version when the Code section was amended.

17

1100993

be permitted to practice dentistry and only qualified dental hygienists be permitted to practice dental hygiene in the State of Alabama. All provisions of this chapter relating to the practice of dentistry and dental hygiene shall be liberally construed to carry out these objects and purposes.

"(b) The Legislature also finds and declares that, because of technological advances and changing practice patterns, the practice of dentistry and the practice of dental hygiene is occurring with increasing frequency across state lines and that the technological advances in the practice of dentistry and in the practice of dental hygiene are in the public interest.

"(c) The Legislature further finds and declares that the practice of dentistry and the practice of dental hygiene are each a privilege. The licensure by this state of nonresident dentists who engage in dental practice and persons who engage in the practice of dental hygiene within this state are within the public interest. The ability to discipline the nonresident dentists and dental hygienists who engage in dental practice in this state is necessary for the protection of the citizens of this state and for the public interest, health, welfare, and safety."

Chapter 9 of Title 34, Ala. Code 1975, provides detailed requirements and regulations regarding the practice of dentistry and dental hygiene in the State. Section 34-9-40(a), Ala. Code 1975, provides, in pertinent part: "In order to accomplish the purposes and to provide for the enforcement of this chapter, there is hereby created the Board of Dental Examiners of Alabama. The board is hereby vested with the authority to carry out the purposes and enforce the provisions of this chapter." Additionally, § 34-9-43, Ala. Code 1975, provides:

18

1100993

"(a) The board shall exercise, subject to this chapter, the following powers and duties:

"(1) Adopt rules for its government as deemed necessary and proper.

"(2) Prescribe rules for qualification and licensing of dentists and dental hygienists.

"(3) Conduct or participate in examinations to ascertain the qualification and fitness of applicants for licenses as dentists and dental hygienists.

"(4) Make rules and regulations regarding sanitation.

"(5) Formulate rules and regulations by which dental schools and colleges are approved, and formulate rules and regulations by which training, educational, technical, vocational, or any other institution which provides instruction for dental assistants, dental laboratory technicians, or any other paradental personnel are approved.

"(6) Grant licenses, issue license certificates, teaching permits, and annual registration certificates in conformity with this chapter to such qualified dentists and dental hygienists.

"(7) Conduct hearings or proceedings to impose the penalties specified in Section 34-9-18.

"(8)a. Employ necessary persons to assist in performing its duties in the administration and enforcement of this chapter, and to provide offices, furniture, fixtures, supplies, printing,

19

1100993

or secretarial service to these persons and expend necessary funds.

"b. Employ an attorney or attorneys, subject to the approval of the Attorney General, to advise and assist in the carrying out and enforcing of the provisions of this chapter. Provided, however, if the board contracts with an outside attorney to be general counsel to the board, that attorney or any member of a law firm with which he or she is associated shall not function as the board's prosecutor at disciplinary hearings.

"(9)a. Investigate alleged violations of this chapter and institute or have instituted before the board or the proper court appropriate proceedings regarding the violation.

"b. Authorize and employ investigators who comply with the Peace Officers' Minimum Standards and Training Act to exercise the powers of a peace officer in investigating alleged violations of the drug or controlled substances laws by persons licensed pursuant to this chapter, including the powers of arrest and inspection of documents.

"(10) Adopt rules and regulations to implement this chapter.

"(11) Publish, on a quarterly basis, all minutes, except minutes of executive sessions, financial reports, schedules of meetings, including anticipated executive sessions, and other pertinent information on the board's website no later than 90 days following the date of

1100993

occurrence. In addition, publish or post annually the rules and regulations promulgated by the board, a copy of the Dental Practice Act, and a list of all persons licensed to practice under this chapter.

"(12) Attend meetings, seminars, workshops, or events that may improve the function and efficiency of the board or improve the ability of the board to enforce and administer this chapter.

"(b) The board, in exercising its powers and duties, shall adhere to guidelines and proceedings of the State Ethics Commission as provided in Chapter 25 of Title 36. The board may adopt rules for the purpose of establishing additional ethical guidelines."[5]

Also, § 34-9-46, Ala. Code 1975, gives the Board "the power to issue subpoenas and compel the attendance of witnesses and the production of all necessary papers, books, and records, documentary evidence and material or other evidence."  Further, any member of the Board has the authority to issue oaths to witnesses or to take witnesses' affirmations.  Additionally, § 34-9-18(a), Ala. Code 1975, sets forth conduct that constitutes grounds for disciplinary action against a dentist or dental hygienist. Section 34-9-18(b) provides:

"(b) When the board finds any dentist or dental hygienist guilty of any of the grounds set forth in subsection (a), it may enter an order imposing one or more of the following penalties:

---

[5]Subsection (b) was added by the amendment to § 34-9-43, Ala. Code 1975, effective September 1, 2011.

21

1100993

"(1) Refuse to issue the dentist or dental hygienist license or permit provided for in this chapter.

"(2) With the exception of negligence as defined in paragraph (a)(6)a. revoke the license or permit of any dentist or dental hygienist.

"(3) Suspend the license or permit of any dentist or dental hygienist.

"(4) Enter a censure.

"(5) Issue an order fixing a period and terms of probation best adapted to protect the public health and safety and to rehabilitate the dentist or dental hygienist.

"(6) Impose an administrative fine not to exceed five thousand dollars ($5,000) for each count or separate offense.

"(7) Impose restrictions on the scope of practice.

"(8) Impose peer review or professional education requirements.

"(9) Assess the costs of the disciplinary proceedings."

Finally, § 34-9-5, Ala. Code 1975, provides:

"Any person who shall engage in the practice of dentistry across state lines or practice dentistry or dental hygiene in this state within the meaning of this chapter without having first obtained from the board a license and an annual registration certificate, when the certificate is required by this chapter, or who violates this chapter, or who willfully violates any published rule or regulation of the board, or who does any

22

1100993

act described in this chapter as unlawful, the penalty for which is not herein specifically provided, shall be guilty of a misdemeanor and upon conviction shall be punished by a fine of not more than five thousand dollars ($5,000) for each offense, to be fixed by the court trying the case, and in addition thereto may be, in the discretion of the court, sentenced to hard labor for the county for a period not to exceed 12 months."

(Emphasis added.)

The purposes of Chapter 9, Title 34, Ala. Code 1975, and the character of the power and duties that are delegated to the Board support a finding that the Board is a State agency that is entitled to § 14 immunity.

### 2. Relation of the Body to the State

Next, this Court must look at the relation of the Board to the State. In reaching its decision in Wilkinson, the Court of Civil Appeals relied heavily on this Court's decision in MH-MRB, stating:

"As explained in MH-MRB, in most every case decided after [Armory Commission of Alabama v.] Staudt[, 388 So. 2d 991 (Ala. 1980)], the 'treasury factor' has been, if not the determinative factor, one of the determinative factors in deciding whether an entity was a State agency entitled to § 14 immunity. MH-MRB, 940 So. 2d at 1004. Immunity is designed to shield the State treasury, not to afford immunity to each and every entity created by statute, even if the purpose of the entity is to protect the public welfare."

___ So. 3d at ___. The Court of Civil Appeals then reasoned:

23

1100993

"Based on Staudt and as explained in MH-MRB, we must examine the 'complete relationship between the State and the Board,' MH-MRB, 940 So. 2d at 1005, and we begin by first noting that, despite the trial court's finding that 'the funds raised by the Board are appropriated by the State to the Board,' it does not appear that the Board receives any State funds at all.  One of the statutes creating the Board does contain language indicating that all money collected by the Board is 'appropriated' to the Board.  Ala. Code 1975, § 34-9-41.  However, that same statute further provides that the money collected by the Board for fees and other receipts is paid to the secretary-treasurer of the Board and is deposited in a bank selected by the members of the Board.  Id. The money collected by the Board is never placed in the State treasury. Cf. Ala. Code 1975, § 34-43-14 (establishing a special revenue fund in the State treasury for the Alabama Board of Massage Therapy Fund). The Board, from all that appears in the record, is fully self-supporting, and no actual appropriation of funds to the Board from the State appears to be required in order for it to perform its functions.  Thus, the State does not '"suppl[y] the means" by which [the Board is] maintained and operated.'  MH-MRB, 940 So. 2d at 1004 (quoting White[ v. Alabama Insane Hosp.], 138 Ala. [479] at 482, 35 So. [454] at 454 [1903)])."

___ So. 3d at ___.

However, in Ex parte Troy University, 961 So. 2d 105, 109-10 (Ala. 2006), this Court noted that, although significant, whether an entity receives funds from the State is not the determinative factor:

"The receipt of funds from the State is a significant factor in deciding whether an entity is a State agency.  Likewise, the fact that a judgment 'would result in a monetary loss to the State treasury,' Ex parte Alabama Dep't of Mental Health & Mental Retardation, 937 So. 2d 1018, 1023 (Ala. 2006), is significant, if not determinative, in the decision.  However, neither factor is the sole basis for our extension of § 14 to State agencies. See, e.g., Ex parte Greater Mobile–Washington

24

1100993

> County Mental Health–Mental Retardation Bd., Inc., 940 So. 2d 990, 993 (Ala. 2006); Tallaseehatchie Creek Watershed Conservancy Dist. v. Allred, 620 So. 2d 628, 630 (Ala. 1993); Armory Comm'n of Alabama v. Staudt, 388 So. 2d 991, 992–93 (Ala. 1980); White v. Alabama Insane Hosp., 138 Ala. 479, 482, 35 So. 454, 454 (Ala. 1903). This Court considers several factors in determining whether an entity is 'an immediate and strictly governmental agenc[y]' and thus entitled to protection from suit under § 14, including factors related to '(1) the character of the power delegated to the body; (2) the relation of the body to the State; and (3) the nature of the function performed by the body.' Rodgers v. Hopper, 768 So. 2d 963, 966 (Ala. 2000)(citing Staudt, 388 So. 2d at 993)."

(Emphasis added.)

Additionally, the Court of Civil Appeals applies an overly narrow definition of "State funds" that appears to misapprehend the true nature of the funds collected and retained by the Board. Section 34-9-16, Ala. Code 1975, provides, in pertinent part:

> "The Board shall establish and collect reasonable fees provided for in this chapter within the ranges set forth below and without having to engage in the rulemaking process ...."

(Emphasis added.) That section also includes a detailed list of fees, such as "Dental Examination Application Fee," Dental Examination Fee," and "Dental Examination Materials Fee." It then sets forth a maximum amount that may be charged for each

25

1100993

listed fee.[6]  Therefore, the legislature requires the Board to establish and collect fees.

Additionally, although the legislature has given the Board some discretion in establishing the amount of fees it will collect, it also limits that discretion by providing the maximum fees that can be established and collected.

Section 34-9-41, Ala. Code 1975, provides:

"The board shall annually elect from its membership a president, vice-president, and secretary-treasurer and may employ staff members who are not members of the board.  The board shall have a common seal.  The board shall hold an annual meeting in Birmingham at the University of Alabama School of Dentistry as soon as practical after the graduation exercises of the dental school for the purpose of examining or participating in the regional examination of applicants for a license to practice dentistry and dental hygiene or at such other times and places as the board may designate for the purpose of transacting its business and examinations.  A majority of the board shall constitute a quorum for the transaction of business at any meeting except that in conducting hearings involving any of the penalties outlined in Section 34-9-18, no less than five members of the board shall be present.  In conducting hearings involving any of the penalties outlined in Section 34-9-18, a majority of the board may appoint any former member of the board who for such purposes shall have all the powers and privileges of such office as a regular board member possesses.  In conducting or participating in exams, a majority of the board may appoint any former member of the board or such other licensed practicing dentists from a jurisdiction recognized by the board who for such purposes shall have all the powers and privileges of such office as a regular board member possesses.  Out of the funds of the board the members thereof shall receive as

---

[6]Before its amendment effective September 1, 2011, § 34-9-16 also set a minimum amount that could be charged for each fee.

26

1100993

compensation a sum to be fixed by the board for each day actively engaged in the duties of their office, and in addition board members shall receive the same per diem and travel allowance as is paid by law to state employees for each day actively engaged in the duties of their office. The secretary-treasurer shall receive such compensation as may be fixed by the board, which shall be in addition to his or her per diem and expenses, provided no per diem or expenses shall be allowed unless his or her duties require his or her absence from his or her office. The secretary[-treasurer] shall receive such compensation as may be fixed by the board.  The secretary-treasurer shall be custodian of all property, money, records and the official seal of the board.  All money received by the board under this chapter shall be paid to and received by the secretary-treasurer of the board.  The secretary-treasurer shall deposit to the credit of the board all funds paid to the board in a bank selected by its members. The board is authorized to expend such funds as shall be necessary to enforce the provisions of this chapter; to pay salaries, expenses and other costs herein provided; to promote the arts and science of dentistry; and for such other purposes as the board shall consider to be in the best interest of dentistry in this state.  All the costs herein provided for shall be paid by checks drawn by the secretary-treasurer and countersigned by the president of the board; except the board may authorize the administrative secretary or the executive director to sign checks for costs that do not exceed a monetary limit to be set by the board in its rules.  Should the property be other than money, the secretary-treasurer shall provide for the safekeeping thereof for the use of the board. All money, including license fees, annual renewal license certificate fees, examination fees and any and all other fees and receipts under the provisions of this chapter, are hereby appropriated to the Board of Dental Examiners to be used as herein provided."

(Emphasis added.)  In this section, the legislature specifically states that the fees and

receipts collected under Chapter 9, Title 34, Ala. Code 1975, are appropriated to the

Board.  The reasoning of the Court of Civil Appeals regarding these amounts appears

27

1100993

to be that, because the money collected by the Board is deposited into a bank account rather than into a special fund in the State treasury, such money does not constitute State funds; therefore, the Court of Civil Appeals reasoned, the Board does not receive any State funds.  In Opinion of the Justices No. 385, 69 So. 3d 847 (Ala. 2011), this Court addressed the constitutionality of Senate Bill 373, which would have allowed certain approved entities to retain a percentage of state income taxes withheld from the pay of eligible employees.  In addressing this issue, this Court stated:

> "With regard to the disposition of the proceeds from state income taxes, § 211.02[, Ala. Const. 1901,] provides:
>
> > "'[A]ll net proceeds of such tax, plus the earnings from investment of the trust funds, must be used only in the manner and in the order following:  (1) To replace the revenue lost to the several funds of the state by reason of the exemption of homesteads from the state ad valorem tax. All homesteads in Alabama are hereby declared to be exempt from all state ad valorem tax to the extent of at least $2,000.00 in assessed value and a sufficient amount is hereby appropriated from the proceeds of the income tax in each fiscal year to replace the revenue lost to the several funds of the state by reason of the homestead exemption herein declared; (2) The residue shall be placed in the state treasury to the credit of the Alabama special education trust fund to be used for the payment of public school teachers salaries only.'

1100993

"(Emphasis added.) Section 211.02 clearly and unequivocally provides that all net proceeds of the state income tax must be used only for the two specific purposes designated therein. First, the proceeds must be used '[t]o replace the revenue lost to the several funds of the state by reason of the exemption of homesteads from the state ad valorem tax.' Second, the 'residue shall be placed in the state treasury to the credit of the Alabama special education trust fund to be used for the payment of public school teachers salaries only.' (Emphasis added.)

"S.B. 373 permits certain approved entities to retain a percentage of state income taxes withheld from the pay of eligible employees. However, § 211.02 requires that 'all net proceeds of [the state income] tax' be used for the specific purposes set forth in § 211.02. Therefore, for S.B. 373 not to be violative of § 211.02, the percentage withheld by the approved entities must not constitute 'net proceeds of [the state income] tax.'

"The Constitution of Alabama of 1901 does not define the phrase 'all net proceeds of such tax' as used in § 211.02. Black's Law Dictionary defines 'net proceeds' as '[g]ross proceeds, less charges which may be rightly deducted.' Black's Law Dictionary 1041 (6th ed. 1990). S.B. 373 allows an approved entity to retain a percentage of state income taxes withheld from eligible employees. If an approved entity collects state income taxes due from its employees but does not remit those taxes in their entirety to the State, is it possible that such retained amounts would constitute 'charges which may be rightly deducted,' rather than 'net proceeds of the tax,' so that the Act would not run afoul of § 211.02? The answer to that question is 'no.'

"In Opinion of the Justices No. 346, 665 So. 2d 1357, 1358-59 (Ala. 1995), this Court addressed the constitutionality of House Bill 586 in light of § 5(a) of Amendment No. 450 to the Constitution of Alabama of 1901 (now § 219.02, Ala. Const. 1901 (Off. Recomp.)) and held:

"'Our response to the first question of this Resolution [requesting the opinion] is that the appropriation that

29

1100993

would be made by Section 11 of House Bill 586 would be contrary to § 5(a) of Amendment No. 450 of the Alabama Constitution, 1901.  Section 5(a) of Amendment No. 450 states:

> """The trust capital shall be held in perpetual trust and shall not be appropriated by the legislature or expended or disbursed for any purpose other than to acquire eligible investments in accordance with the provisions of this amendment....  [But] any trust income derived therefrom shall be paid directly into the general fund as it is received by the board, subject to appropriation and withdrawal by the legislature."

"'(Emphasis added.) In the Amendment, "trust income" is defined as "the net income received by the state, subsequent to the transfer of the initial trust capital by the state treasurer to the board, from the investment and reinvestment of all assets of the trust fund, determined in accordance with the provisions of this amendment."

"'Under this Bill, the legislature provides for a continuing appropriation over a period of 30 years, beginning in 1995, from the annual interest earned on investments of the Alabama Trust Fund to the Alabama Incentives Financing Authority.  While the legislature's broad governmental power is plenary in character, it is not absolute and is subject to the express restrictions of the state constitution.  Van Hart v. deGraffenried, 388 So. 2d 1196, 1198 (Ala. 1980); see also, e.g., City of Birmingham v. City of Vestavia Hills, 654 So. 2d 532 (Ala. 1995).  Amendment No. 450, by express language, requires that the interest earnings on investments be paid into the state's General Fund upon receipt.  After the trust income has

30

1100993

been paid into the General Fund, the legislature may appropriate it as it sees fit, subject to constitutional restrictions. Article IV, § 71, of the Alabama Constitution, 1901, is one such constitutional restriction on the legislature's power to appropriate funds. According to § 71:

> """The general appropriations bill shall embrace nothing but appropriations for the ordinary expenses of the executive, legislative, and judicial departments of the state, for interest on the public debt, and for public schools.... All other appropriations shall be made by separate bills, each embracing but one subject."

"'(Emphasis added.)

"'The legislature declares in § 11(a) of the Bill that the appropriation "is made pursuant to and in accordance with [Amendment No. 450] and that the interest income on investments in the Alabama Trust Fund is not a part of the General Fund of the State until deposited in the General Fund." The Governor, in his brief, argues that the appropriation of specified, annual installments of income from the Alabama Trust Fund for 30 years, made by Section 11 of H.B. 586, does not constitute an appropriation of money in the state's General Fund because the money is appropriated before it reaches the state's General Fund. The simple answer to this contention is: The constitution itself states that the income from investments of the Alabama Trust Fund shall be paid directly to the state's General Fund. The legislature is without power to override this express constitutional provision by the subterfuge of diverting such funds before they are actually paid into the General Fund. House Bill

31

1100993

586 is invalid, because it is in direct conflict with the constitutional provisions of Amendment No. 450. The constitution has "earmarked" these funds for the General Fund.

"'The Governor states in his brief that, because under H.B. 586 the legislature would be powerless to control the interest income earned by the Alabama Trust Fund, a fact in contrast to its ability to increase a special tax to service a debt, the scheme authorized by the Bill is not a debt of the state. He asserts it is the economic and legal equivalent of an annual appropriation. We cannot agree. The inescapable fact is: by constitutional mandate these funds are required to be paid into the General Fund as received, and the legislature is bound by the constitution to appropriate those funds only as permitted by express provisions of the constitution.

"'The legislature may not avoid constitutional restrictions on its authority to appropriate state funds by "diverting" such funds from the General Fund before they are received by the General Fund.'

"(Emphasis, other than as indicated, added.) In that same opinion, this Court also stated: 'No constitutional distinction exists between money the state already has and that which it will receive.' 665 So. 2d at 1362.

"Based on this Court's reasoning in Opinion of the Justices No. 346, the legislature may not prevent any amounts that are withheld from employees' paychecks pursuant to state-income-tax laws from becoming state-income-tax proceeds to be deposited into the appropriate funds simply by allowing an approved entity to retain those amounts once collected, rather than turning them over to the State. As soon as an employer withholds state income tax from an employee's paycheck, the amount withheld becomes gross proceeds of the state income tax."

32

1100993

69 So. 3d at 856-58.  The reasoning this Court employed in Opinion of the Justices No. 385, supra, and Opinion of the Justices No. 346, 665 So. 2d 1357 (Ala. 1995), is persuasive here.

In this case, once the Board collects the funds established by the legislature, those funds become State funds.  The mere fact that the legislature appropriates those funds before they reach the State treasury does not alter their status as State funds.  Also, the fact that the legislature has allowed the Board to deposit those funds in a bank rather than in the State treasury also does not alter their status as State funds.  Although the funds appropriated to the Board are not deposited in the State treasury, but in a bank, the Board does not have unbridled discretion regarding the expenditure of those funds.  Section 34-9-41, Ala. Code 1975, specifically authorizes the expenditures of such funds for only certain specific purposes.  Additionally, § 34-9-41, Ala. Code 1975, even provides for the manner in which the costs for such expenditures will be paid and who has the authority to sign checks on behalf of the Board.  Finally, our conclusion that the funds appropriated directly to the Board are State funds is further buttressed by the provisions of the Alabama Sunset Law, § 41-20-1 et seq., Ala. Code 1975, which provides for the continuation or termination of State agencies.  The Board of Dental Examiners is one of the agencies enumerated in

33

1100993

§ 41-20-3(a)(2)q., Ala. Code 1975. Section 41-20-12, Ala. Code 1975, provides that all unexpended funds of an enumerated agency that has been terminated will revert "back to the state fund from which its appropriation was made, unless otherwise provided by law."

The Court of Civil Appeals incorrectly concluded that "the State does not "'suppl[y] the means" by which [the Board is] maintained and operated.' MH-MRB, 940 So. 2d at 1004 (quoting White[ v. Alabama Insane Hosp.], 138 Ala. [479] at 482, 35 So. [454] at 454 [(1903)])." ___ So. 3d at ___.

Further, other provisions in Chapter 9, Title 34, Ala. Code 1975, regarding the relationship between the Board and the State indicate that the Board is a State agency. Section 34-9-41, Ala. Code 1975, provides that members of the Board "shall receive the same per diem and travel allowance as is paid by law to state employees for each day actively engaged in the duties of their office." Also, § 34-9-42, Ala. Code 1975, provides, in pertinent part:

> "The secretary-treasurer of the board shall compile an annual report which shall contain an itemized statement of all money received and disbursed and a summary of the official acts of the board during the preceding year, and the report shall have attached thereto a certified report and audit made by a certified public accountant of the State of Alabama. A copy of the report and audit shall be filed of record in the office of the Department of Finance of the State of Alabama, and a copy

34

1100993

> shall be retained by the secretary-treasurer to be rendered upon request, to the dentists at large in the State of Alabama."

(Emphasis added.)  Although § 34-9-43(8)b. authorizes the Board to hire an attorney or attorneys to advise and assist it in carrying out and performing its duties under the provisions of Chapter 9, Title 34, Ala. Code 1975, that hiring is "subject to the approval of the Attorney General."  Additionally, § 34-9-43.1, Ala. Code 1975, provides:

> "(a) The board may employ investigators, attorneys, agents, and any other employees and assistants to aid in the administration and enforcement of the duties of the board. The board may request assistance from the Attorney General, district attorneys, or other prosecuting attorneys of this state in the various circuits and counties. All prosecuting attorneys throughout the state shall assist the board, upon request of either, in any action for injunction or any prosecution without charge or additional compensation."

(Emphasis added.)  Section 34-9-45, Ala. Code 1975, provides:

> "The board and its members and officers shall assist prosecuting officers in the enforcement of this chapter, and it shall be the duty of the board, its members and officers to furnish the proper prosecuting officers with such evidence as it or they may ascertain to assist them in the prosecution of any violation of this chapter, and the board is authorized for such purposes to make such reasonable expenditures from the funds of the board as it may deem necessary to ascertain and furnish such evidence."

35

1100993

All these various provisions of Chapter 9, Title 34, Ala. Code 1975, show that the relationship between the Board and the State supports the conclusion that the Board is a State agency that is entitled to § 14 immunity.

### 3. Nature of the Function Performed by the Board

Finally, the nature of the function performed by the Board also supports a finding that the Board is entitled to State immunity. In addition to examining and licensing those who wish to engage in the practice of dentistry or dental hygiene in the State, the Board also promulgates rules and regulations governing the practice of dentistry and the practice of dental hygiene; investigates violations of Chapter 9, Title 34, Ala. Code 1975; institutes proceedings or has proceedings instituted before it regarding violations of Chapter 9, Title 34; and takes disciplinary action against those found guilty of conduct set forth in § 34-9-18(a), Ala. Code 1975. Additionally, § 34-9-5, Ala. Code 1975, provides that willful violations of the rules and regulations promulgated by the Board constitutes a misdemeanor.

In Rodgers v. Hopper, 768 So. 2d 963 (Ala. 2000), this Court addressed the issue whether the Alabama Corrections Institute Finance Authority ("ACIFA") was a State agency entitled to State immunity:

> "Rodgers argues that ACIFA is not entitled to sovereign immunity because, he argues, it is not an agency of the State and thus is not

36

1100993

protected by Art. I, § 14, of the Constitution.  Section 14 provides: '[T]he State of Alabama shall never be made a defendant in any court of law or equity.'  This Court has held that 'the use of the word "State" in Section 14 was intended to protect from suit only immediate and strictly governmental agencies of the State.'  Tallaseehatchie Creek Watershed Conservancy Dist. v. Allred, 620 So. 2d 628, 631 (Ala. 1993) (quoting Thomas v. Alabama Mun. Elec. Auth., 432 So. 2d 470, 480 (Ala. 1983)). Thus, we must determine what constitutes an 'immediate and strictly governmental agenc[y].'  The test for determining whether a legislatively created body is an immediate and strictly governmental agency for purposes of a sovereign-immunity analysis involves an assessment of (1) the character of the power delegated to the body; (2) the relation of the body to the State; and (3) the nature of the function performed by the body.  Armory Comm'n of Alabama v. Staudt, 388 So. 2d 991, 993 (Ala. 1980)).  In Tallaseehatchie Creek Watershed Conservancy Dist. v. Allred, supra, we applied these factors to an entity with powers similar to those of ACIFA.  The Legislature had organized the Tallaseehatchie Creek Watershed Conservancy District ('Tallaseehatchie Creek') as a watershed conservancy district ('WCD'), pursuant to § 9-8-50 et seq., Ala. Code 1975.  As a WCD, [Tallaseehatchie] Creek was authorized to act as an agent of the State.  It enjoyed the customary governmental power of eminent domain; it was exempt from State and local taxation; and it benefited from legislative appropriations.  See §§ 9-8-61(1), 9-8-61(7), and 9-8-67.  Despite these decidedly governmental characteristics, we held that Tallaseehatchie Creek, as a WCD, was an independent entity, and, thus, was not entitled to sovereign immunity. Tallaseehatchie Creek, 620 So. 2d at 631.

"This Court based its holding in that case on several key characteristics that distinguished WCDs as entities separate from the State.  Those characteristics included the ability to: (1) sue and be sued; (2) enter into contracts; (3) sell and dispose of property; and (4) issue bonds.  Id. at 630 (citing §§ 9-8-25(a)(13), 9-8-61(6), and 9-8-61(4) and (5)).  Notably, the Legislature also had expressly provided that debts and obligations of a WCD were not the State's debts and obligations.  Id.

37

1100993

(citing § 9-8-61(3)).  We found this final characteristic to be dispositive, stating:

> "'This last provision clearly contemplates that WCDs are entities separate and apart from the State; the provision also introduces an element of ambiguity into the crucial question of the financial responsibility for any judgment adverse to a WCD.'

"Tallaseehatchie Creek, 620 So. 2d at 630.

> "In the present case, ACIFA has these same qualities, qualities suggesting that it is an entity independent of the State.  These qualities include: (1) the power to sue and be sued; (2) the power to enter into contracts; (3) the power to sell and dispose of property; (4) the power to issue bonds; and (5) exclusive responsibility for its financial obligations (the same quality that we found dispositive in Tallaseehatchie Creek). See §§ 14-2-8(2), 14-2-8(5) through (7), 14-2-12, and 14-2-24.
>
> "ACIFA argues that, notwithstanding that it has those qualities, it is organizationally intertwined with the State by virtue of the State's oversight power regarding ACIFA's chief operating activity -- prison construction.  This oversight power, however, is not different from the power to direct operations that is commonly exercised by the owner of any ordinary business.  In this case, the State's power to direct operations includes the power to approve prison-construction plans and the use of prison labor.  ACIFA's relationship with the State does not persuade us to accept its argument.
>
> "Rather than looking to ACIFA's operations, we must look to its organizational and financial structure, as we did with the WCDs in Tallaseehatchie Creek.  Accordingly, we conclude that ACIFA and, derivatively, its officials are not entitled to sovereign immunity."

768 So. 2d at 966-67.

38

1100993

In this case, the Board has the authority to enter into employment contracts and to enter into contracts to employ attorneys. However, as we previously noted, the Board's authority to employ attorneys is subject to approval by the attorney general. See § 34-9-43(8)b., Ala. Code 1975.

Unlike ACIFA in Rodgers, the Board was not granted the carte blanche authority to sue and be sued. Instead, § 34-9-29, Ala. Code 1975, merely authorizes the Board to bring an action in its name in any court of the State for the purpose of enjoining a person from violating the provisions of Chapter 9, Title 34, Ala. Code 1975. Also, § 34-9-18(f), Ala. Code 1975, provides:

> "Members of the board, any agent, employee, consultant, or attorney for the board, and the members of any committee of dentists or dental hygienists impaneled by the board, shall be immune from suits for any conduct in the course of their official duties with respect to investigations or hearings; provided, that the persons act without malice and in good faith that such investigations or hearings are warranted by the facts, known to them after diligent effort to obtain the facts of the matter relative to the investigations or hearings."

Additionally, unlike ACIFA in Rodgers, the Board was not specifically authorized by the legislature to sell and dispose of property. At most, the legislature provided that the Board could "provide offices, furniture, fixtures, supplies, printing, or secretarial service" to those persons it employed to assist in its duties and in administering and enforcing the provisions of Chapter 9, Title 34, Ala. Code 1975.

39

1100993

§ 34-9-43(a)(8)a., Ala. Code 1975. Further, the legislature did not authorize the Board to issue bonds or to incur indebtedness. Finally, in Rodgers, this Court relied heavily on the fact that the legislature expressly provided that the debts and obligations of ACIFA were not the debts and obligations of the State. Chapter 9, Title 34, Ala. Code 1975, does not contain any similar provisions. Therefore, Rodgers is distinguishable.

The facts of this case are more clearly akin to those in Mooneyham v. State Board of Chiropractic Examiners, 802 So. 2d 200 (Ala. 2001). In Mooneyham, this Court addressed the issue whether the Board of Chiropractic Examiners was an agent of the State and therefore entitled to State immunity:

> "We next address the immunity of the Board itself. The Board argues that it is a State agency and that as a State agency it enjoys absolute immunity from any lawsuit. We agree.
>
> "Article I, § 14, of the Constitution of 1901, provides: '[T]he State of Alabama shall never be made a defendant in any court of law or equity.' With respect to the word 'State,' we have said:
>
>> "'This Court has held that "the use of the word 'State' in Section 14 was intended to protect from suit only immediate and strictly governmental agencies of the State." Tallaseehatchie Creek Watershed Conservancy Dist. v. Allred, 620 So. 2d 628, 631 (Ala. 1993) (quoting Thomas v. Alabama Mun. Elec. Auth., 432 So. 2d 470, 480 (Ala. 1983)). Thus, we must determine what constitutes an "immediate and strictly governmental agenc[y]." The test

40

1100993

> for determining whether a legislatively created body is an immediate and strictly governmental agency for purposes of a sovereign-immunity analysis involves an assessment of (1) the character of the power delegated to the body; (2) the relation of the body to the State; and (3) the nature of the function performed by the body. Armory Comm'n of Alabama v. Staudt, 388 So. 2d 991, 993 (Ala. 1980).'

"Rodgers v. Hopper, 768 So. 2d 963, 966 (Ala. 2000).

> "The Board of Chiropractic Examiners is a legislatively created body. § 34-24-140, Ala. Code 1975. The Board is authorized to control the licensing of chiropractors, § 34-24-161, and is charged with regulating the chiropractic profession, § 34-24-166. Although the Board may collect certain fees to generate revenue, it is required by law to deposit those funds in the State Treasury, which sets aside those funds for the Board's use. § 34-24-143. Under § 34-24-143, those funds are appropriated to the Board 'to defray the expenses incurred' in carrying out the Board's charges. Our examination of the statutes creating and empowering the Board shows that the Board is a regulatory body that receives its funding from the State. Therefore, we conclude that the Board is a State agency and, consequently, is entitled to § 14 immunity. Because this immunity, when applied to a governmental entity, is absolute, the circuit court properly dismissed all the claims against the Board."

802 So. 3d at 203-04. Like the Board of Chiropractic Examiners, the Board "is a regulatory body that receives its funding from the State." 802 So. 2d at 204.

Based on the foregoing, it is clear that the Board is "an arm of the state" rather than a mere "franchisee licensed for some beneficial purpose." Staudt, 388 So. 3d at 993. Therefore, the Board is an "immediate and strictly governmental agenc[y] of the

41

1100993

State," Mooneyham, 802 So. 2d at 203-04, that is entitled to immunity pursuant to

Art. I, § 14, Ala. Const. 1901, and the Court of Civil Appeals erred when it concluded

otherwise.[7]

B.

The Board also argues that the Court of Civil Appeals erred when, based on its

conclusion that the Board was not a State agency, it concluded that the Board of

Adjustment was not the proper forum for Wilkinson's claims against it.

In Vaughan v. Sibley, 709 So. 2d 482, 486 (Ala. Civ. App. 1997), the Court of

Civil Appeals stated:

> "Because of the sovereign immunity clause, the courts of this state
> are without jurisdiction to entertain a suit seeking damages, including
> back pay, for breach of contract against the state. State Bd. of
> Adjustment v. Department of Mental Health, 581 So. 2d 481 (Ala. Civ.
> App. 1991). Vaughan's remedy, if any, is with the Board of Adjustment.
> Sections 41-9-62(a)(4) and (a)(7), Code of Alabama 1975, provide:

---

[7]In Versiglio v. Board of Dental Examiners of Alabama, 651  F.3d 1272 (11th. Cir. 2011),
decided after Wilkinson, the United States Court of Appeals for the Eleventh Circuit addressed
the issue whether the Board was entitled to Eleventh Amendment immunity from Versiglio's
claims asserted pursuant to the Fair Labor Standards Act.  In addressing this issue, the Eleventh
Circuit noted that the Board "appear[ed] to have a viable argument that it is an arm of the State
under" the test set forth in Miccosukee Tribe of Indians v. Florida State Athletic Commission,
226 F. 3d 1226 (11th Cir. 2000).  651 F.3d at 1274.  However, in light of the Court of Civil
Appeals' decision in Wilkinson, the Eleventh Circuit ultimately determined that "a holding by
[the Eleventh Circuit] that the Board is an arm of the state for purposes of sovereign immunity
would be inappropriate."  651 F.3d at 1277.

42

1100993

"'(a) The Board of Adjustment shall have the power and jurisdiction and it shall be its duty to hear and consider:

"'....

"'(4) All claims against the State of Alabama or any of its agencies, commissions, boards, institutions or departments arising out of any contract, express or implied, to which the State of Alabama or any of its agencies, commissions, boards, institutions or departments are parties, where there is claimed a legal or moral obligation resting on the state;

"'....

"'(7) All claims for underpayment by the State of Alabama or any of its agencies, commissions, boards, institutions or departments to parties having dealings with the State of Alabama or any of its agencies, commissions, boards, institutions or departments.'

"(Emphasis added.) The Board of Adjustment has jurisdiction over claims against the state that are not justiciable in the courts because of the state's constitutional immunity from being made a defendant. Lee v. Cunningham, 234 Ala. 639, 641, 176 So. 477 (1937)."

Further, § 41-9-62(b), Ala. Code 1975, provides, in pertinent part:

"[T]he jurisdiction of the Board of Adjustment is specifically limited to the consideration of the claims enumerated in subsection (a) of this section and no others; ... nothing contained in this subdivision shall be

43

1100993

> construed to confer jurisdiction upon the Board of Adjustment to settle or adjust any matter or claim of which the courts of this state have or had jurisdiction ...."

In Lee v. Cunningham, 234 Ala. 639, 176 So. 477 (1937), this Court stated the following with regard to the original act creating the Board of Adjustment:

> "Our judgment, however, is that the legislative purpose disclosed in the act ... was to confer on said board jurisdiction over claims against the state, colorable legally and morally well grounded, not justiciable in the courts because of the state's constitutional immunity from being made a defendant (Const. 1901, § 14), and to exclude from its jurisdiction claims well grounded in law or equity, cognizable by the courts."

234 Ala. at 641, 176 So. at 479 (emphasis added).

The Court of Civil Appeals based its conclusion that the Board of Adjustment was not the proper forum for Wilkinson's claims on its erroneous holding that the Board was not entitled to § 14 immunity. However, because we have determined that the Board is a State agency and therefore entitled to immunity pursuant to § 14, the courts of this State are without jurisdiction in this case, and the Board of Adjustment would have jurisdiction over Wilkinson's claims.

For these reasons, the Court of Civil Appeals erred when it reversed the trial court's judgment dismissing Wilkinson's complaint against the Board and remanded the case for further proceedings. Accordingly, we reverse the judgment of the Court

1100993

of Civil Appeals and remand the case to that court for the entry of a judgment consistent with this opinion.

REVERSED AND REMANDED.

Malone, C.J., and Woodall, Stuart, Bolin, Parker, Murdock, Shaw, and Main, JJ., concur.